[No. 2424]

PHŒBE BOSWELL CLARK, RESPONDENT, v. ALLEN L. CLARK, APPELLANT.

[189 Pac. 676;  194 Pac. 96]

1. MARRIAGE — CONTINUED RELATIONS AFTER REMOVAL OF IMPEDIMENT TO LEGAL MARRIAGE ESTABLISHES VALID MARRIAGE.
   That parties who had entered into a formal marriage which was invalid because the man had a wife living continued cohabitation after the man's former wife secured a divorce, though no new marriage agreement or change in relations was shown, establishes a valid marriage.

2. MARRIAGE — IGNORANCE OF IMPEDIMENT DURING COHABITATION AFTER ITS REMOVAL DOES NOT DEFEAT.
   The ignorance by a woman of an existing marriage of the man to whom she believed herself married during cohabitation after the former wife had secured divorce does not prevent the continued relations from establishing a valid marriage.

3. MARRIAGE — PRESUMPTION OF INNOCENCE DOES NOT DEFEAT COMMON-LAW MARRIAGE WHICH MADE HUSBAND BIGAMIST.
   The presumption of innocence, whether it is a presumption of law or of fact, is a rebuttable one, and it does not defeat a valid marriage by continued cohabitation after divorce of the man rendered marriage legal, though thereafter he had married another, so as to be guilty of adultery if the cohabitation made a valid marriage.

4. MARRIAGE—FINDING OF NEW AGREEMENT HELD OUTSIDE PLEADINGS.
   Where plaintiff's pleading and proof relied on a marriage established by continued cohabitation after defendant was divorced by his former wife and showed plaintiff's ignorance of defendant's prior marriage until after suit was begun, a finding by the trial court that after defendant's divorce the parties made a new marriage agreement was outside the issues.

5. APPEAL AND ERROR — FINDING OUTSIDE EVIDENCE HARMLESS WHERE OTHER FINDINGS SUPPORT JUDGMENT.

Finding by the trial court outside of the pleading and the evidence does not require reversal where other findings supported by the evidence were sufficient to sustain the judgment.

6. APPEAL AND ERROR—JUDGMENT PRESUMED NOT TO HAVE BEEN BASED ON FINDING OUTSIDE ISSUES.

Judgment, after findings by court that the parties cohabited after the man was divorced, and that thereafter they made a new marriage agreement, which latter finding was outside the issues and evidence, *held* not to have been based on the erroneous finding, since it will not be presumed that the trial court attempted to grant relief on an entirely different state of facts involving different principles of law from those stated in the pleadings.

7. DIVORCE—DECREE NOT REVERSED FOR INSINCERITY OR LACHES OF PLAINTIFF CONSIDERED BY TRIAL COURT.

Where the trial court, which granted divorce to plaintiff, considered the question of defendant's innocence in contracting a subsequent marriage and plaintiff's sincerity and her laches, the decree will not be reversed on appeal because of doubt as to her sincerity.

## ON REHEARING

1. MARRIAGE—IS A CIVIL CONTRACT, ENTERED INTO BY CEREMONY OR MUTUAL AGREEMENT.

"Marriage" is a civil contract, into which parties who are competent may enter, either through the performance of the ceremony of marriage or through a mutual agreement between the parties to be husband and wife in præsenti, with subsequent cohabitation as husband and wife, and the holding out to the world and each other as such.

2. MARRIAGE—CONTRACT BY MUTUAL AGREEMENT AND SUBSEQUENT COHABITATION A QUESTION OF FACT.

Whether or not a marriage contract by mutual agreement has been entered into, and cohabitation indulged in between the parties, is not a matter of law, but merely a matter of fact, to be determined from the circumstances of the particular case.

3. MARRIAGE — EVIDENCE SUPPORTING FINDING OF MARRIAGE BY MUTUAL AGREEMENT, WITH COHABITATION.

In a wife's suit for divorce, wherein it appeared that at the time of the marriage the husband had another wife living, from whom he erroneously believed he had been divorced, evidence *held* to support a finding that, after the decree of divorce from defendant's first wife had been entered, the parties mutually agreed to live as husband and wife, and did so live and hold each other out to the world as such.

4. MARRIAGE — MUTUAL AGREEMENT, FOLLOWED BY COHABITATION, HELD COMMON-LAW MARRIAGE.

A marriage contract entered into by mutual agreement, followed by cohabitation as husband and wife, holding each other

out to the world as such after impediments to a legal marriage have been removed, is sufficient to constitute a common-law marriage.

5. MARRIAGE — DEFENDANT IN DIVORCE SUIT HELD ESTOPPED TO DENY THAT HE WAS PLAINTIFF'S HUSBAND.

    Where a husband married his wife under the belief that he had been legally divorced from a previous wife, when in fact a decree of divorce was not entered until after the ceremony, and that thereafter the husband and wife mutually agreed to continue to live as such, the husband stating that the wife was and always would be his wife, the husband, in a subsequent divorce suit by the wife, *held* estopped to deny that he was her husband.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran,* Judge.

Action for divorce by Phœbe Boswell Clark against Allen L. Clark. Decree for plaintiff, and defendant appeals. **Affirmed. On rehearing, judgment affirmed.**

*Hoyt, Norcross, Thatcher, Woodburn & Henley,* and *John D. Hoyt,* for Appellant:

Nothing short of an actual marriage, as distinguished from the mere presumption which arises from cohabitation and repute following the removal of an impediment, would suffice to support this action. Under the pleadings, no such contract could properly be proved. Before plaintiff can rely upon an actual contract of marriage *per verba de præsenti,* she must amend her pleadings and allege the time and place of such contract. There is no evidence of any valid contract of marriage between the parties, even if proof of same were admissible.

Under the facts disclosed, no actual marriage could have existed. Consent and capacity were never united. The marriage ceremony was void, because defendant had a wife living, and no new consent could have been interchanged during the cohabitation of the parties, since the plaintiff never knew of the existence of any disability, and hence was always relying upon the original, and void, consent. The presumption that the parties exchanged a new consent arose the moment the disability to their marriage was removed, but to give effect

to this the court would have to indulge the presumption that defendant was guilty of the crime of bigamy. Rev. Laws, 6456; State v. Zichfeld, 23 Nev. 304. The crime of bigamy is a felony. As against this the law imposes the presumption of innocence, the most favored of the law. It outweighs the presumption that the parties exchanged a new consent the moment the disability was removed. The result is that this mere presumption of a new consent must fall, under the circumstances of the case at bar. Case v. Case, 17 Cal. 600; People v. Anderson, 26 Cal. 133; White v. White, 82 Cal. 427; Helfer v. People, 156 Ill. 511; Sparks v. Ross, 65 Atl. 977; Moore v. Moore, 102 Tenn. 148; Norman v. Goods, 38 S. E. 317; Moore v. Heinke, 24 South. 374; Lamkin v. Insurance Co., 52 Pac. 1040; State v. St. John, 68 S. W. 374; Smith v. Fuller, 16 L. R. A. 98.

There was a material variance between the pleadings and the proof, which entitled defendant to require plaintiff to amend. Marshal v. Golden Fleece Co., 16 Nev. 156; Rev. Laws, 5080.

The presumption which arises from cohabitation and repute will fall as against a subsequent and actual marriage; and as against such marriage, proof of a prior actual marriage alone is admissible. In Re Baldwin's Estate, 123 Pac. 267; In Re Campbell's Estate, 108 Pac. 669; Jones v. Jones, 48 Md. 391; Weatherford v. Weatherford, 20 Ala. 556; Myatt v. Myatt, 44 Ill. 473; Waddingham v. Waddingham, 21 Mo. App. 609; Jackson v. Claw, 18 Johns. 346; Houpt v. Houpt, 5 Ohio, 539; Clayton v. Wardell, 4 N. Y. 230.

*Frame & Raffetto,* for Respondent:

Counsel for appellant lay down the proposition that the presumption of innocence of appellant overcomes the presumption of his consent to the marriage, and then attempt to explain away the evidence which the trial court found ample to establish the element of consent—whether called present consent, present assent, mutual understanding, agreement, or matrimonial

intention. There is abundant evidence that this element existed both before and after the impediment of the former marriage had been removed. Cohabitation and repute for the period of eighteen years is unquestioned; and that the parties lived together as husband and wife with matrimonial intent during all of said period is testified to by both parties, and this evidence stands uncontradicted in the record.

Under our decisions a common-law marriage is recognized and valid; the form of the contract is immaterial. It consists in the meeting of the minds of the parties, with matrimonial intent, coupled with cohabitation and repute. If the minds meet on a common plane and with a common understanding, the contract is complete.

By the Court, SANDERS, J.:

This is an action for divorce on the ground of adultery, brought by Phœbe Boswell Clark against Allen L. Clark in the district court of Washoe County, commenced on the 26th day of December, 1917, and ending in a decree in her favor on the 30th day of September, 1919. The cause was tried before the court without a jury. The defendant appeals to this court from an order denying his motion for a new trial and from the judgment.

The facts are stated in the pleadings. The complainant alleges that plaintiff and defendant intermarried on or about the 6th day of August, 1892, at Winnemucca, Nevada, and that said marriage has never been annulled and the bonds of matrimony existing between plaintiff and defendant have never been dissolved, and that they are husband and wife. She alleges that since said marriage on or about February 16, 1910, defendant entered into a contract of marriage and had a marriage ceremony performed between himself and one Emily James, and ever since has lived openly with said Emily James as his wife, and during all of said time held her out to be his wife and lived openly and notoriously in adultery with her and been guilty of a continual and systematic course

of adultery with said Emily James, all of which remains uncondoned and unforgiven.

The defendant by his answer denies that plaintiff and defendant on or about the 6th day of August, 1892, at said place, or at any other time or place, or at all, intermarried, and he denies that plaintiff and defendant then, or at any other time, became and now are husband and wife, but, on the contrary, on the 6th .day of August, 1892, and for a long time prior and subsequent thereto, he had a wife living, to wit, Mary E. Clark. He admits that he intermarried with said Emily James on the 16th day of February, 1910, admits that he openly lived with her as his wife, and alleges that said Emily James is his lawful wife.

For reply to the bar pleaded in defense of her action plaintiff alleges that on the 10th day of April, 1893, the defendant was divorced from said Mary E. Clark by the superior court of Sacramento County, Calif., and that the impediment to the marriage of the plaintiff and defendant was at that time removed, and there has been no impediment to their marriage since said date. She further alleges that, at the time of the intermarriage between plaintiff and the defendant, plaintiff had no knowledge of Mary E. Clark, and no knowledge that defendant had been, or claimed to have been, married before his marriage with plaintiff, and plaintiff never did have knowledge of such fact until a time subsequent to the filing of the complaint in the present action. She further alleges that from the time of her intermarriage with the defendant, and also from and after the 10th day of April, 1893, until a period subsequent to February 16, 1910, plaintiff and defendant lived and cohabited together as husband and wife, and defendant never during all of said time informed plaintiff that she was not his lawful wife and that he had a former wife, and she alleges that by reason of the cohabitation between plaintiff and defendant subsequent to said decree of divorce between defendant and said Mary E. Clark, as aforesaid,

the plaintiff became, and ever since has been, and now is the common-law wife of said defendant, and as such entitled to all the privileges and benefits of matrimony, and in truth and in fact the wife, and the only wife, of said defendant, and that plaintiff and defendant are husband and wife.

The trial court upon the conclusion of the case took ample time to consider its decision, and wrote a lengthy opinion reviewing the testimony and filed special findings of facts. One of those findings, and the one which is the foundation of plaintiff's right to a divorce, is in substance as follows:

That the parties intermarried at Winnemucca, Nevada, on the 6th day of August, 1892; that at the time of the marriage the defendant had a wife living in the State of California, who had commenced in that state a proceeding against the defendant on the 20th day of July, 1892, and on the 10th day of April, 1893, a minute order was entered in that proceeding granting to the defendant's then wife, Mary E. Clark, a divorce, and on March 6, 1906, a decree of divorce absolute was signed and entered; that at the time of the marriage between plaintiff and defendant the plaintiff had no knowledge of any other woman claiming to be the wife of defendant; that said marriage was entered into in good faith, and that during all the times from said date of marriage and up to and about the year 1910 the plaintiff and defendant lived and cohabited as husband and wife and held themselves out to the world as such husband and wife during all of said times; that during said period of time a child was born to the marriage, which died; that the parties lived together as husband and wife and held themselves out to the world as such in the States of California and Nevada after the marriage of Mary E. Clark and defendant had been annulled; that a marriage contract was entered into between the plaintiff and the defendant after the impediment to the defendant's marriage was removed by the divorce which

was granted to defendant's former wife in California, and that said parties continued to live together as husband and wife pursuant to said agreement until the year 1910, when defendant left the plaintiff in the State of California, came to Reno, Nevada, and there on the 16th day of February, 1910, entered into a supposed marriage contract with and was wrongfully and unlawfully married to one Emily James; that plaintiff and defendant ever since said marriage have been, and now are, husband and wife.

The objections interposed to this finding furnish the grounds for this appeal. While numerous errors have been assigned, they have been condensed and are discussed under three leading propositions: First, that the pleadings do not state a cause of action against the defendant; second, there is a material variance between the pleadings and proof (and the decision of the court) that entitled defendant to require plaintiff to amend her pleadings; third, there is no evidence whatever of any contract of marriage between plaintiff and defendant.

For convenience we will consider the assignments in their order.

1.  First, the pleadings do not state a cause of action. If we clearly interpret the somewhat involved argument, it is the contention of the learned counsel for appellant that the pleadings do not state a cause of action, in that the marriage relation is not alleged or shown to exist. From this premise it is argued that, since the plaintiff alleges in her pleading that at the time of her marriage to the defendant she had no knowledge of Mary E. Clark, the defendant's former wife, and no knowledge that the defendant had or claimed to have had a former wife living until after she had commenced her action, it would be folly to assume that after the impediment to their marriage had been removed the parties consented or mutually agreed to take each other as husband and wife, and that in the absence of such averment the complaint is defective. The main question, therefore, to be

determined is whether the marriage of the parties, although illegal at the time of its solemnization by reason of a legal impediment, such as the existing prior marriage of the defendant, became legal by virtue of the removal of the impediment, whether known or unknown. Counsel contend that the inference of marriage as alleged in the complaint is rebutted, because the parties had commenced to live together in pursuance of an invalid marriage, and that the consent deducible from continued cohabitation after the impediment was removed must be referred to the invalid ceremony. We are not in accord with this doctrine. It must be conceded that the marriage, although invalid, was undoubtedly a consent by the parties to live together as husband and wife; and their subsequent continued cohabitation as man and wife for a period of approximately eighteen years is proof of continued consent. Eaton v. Eaton, 66 Neb. 676, 92 N. W. 995, 60 L. R. A. 605, 1 Ann. Cas. 199. The question of consent to marry is sufficiently covered by the case of Parker v. De Bernardi, 40 Nev. 361, 164 Pac. 645.

We accept and reaffirm the general rule that, if parties desire marriage and do what they can to render their union matrimonial, but one of them is under a disability, their cohabitation thus matrimonially meant and continued after the disability is removed will, in law, make them husband and wife from the moment that such disability no longer exists, although there are no special circumstances to indicate that the parties expressly renewed their consent or changed their mode of living after the removal of the impediment; and, even though the removal is unknown, continued cohabitation thereafter evidences consent to live in wedlock. 18 R. C. L. 436, where the cases in support of the doctrine are collated in the notes.

2. Taking the facts as stated in the complaint, and applying the law to them, we are of the opinion that, assuming the ignorance of the plaintiff of the invalidity

of her marriage with the defendant during the whole period of their cohabitation, yet after the removal of the impediment to their marriage they became married persons, and the complaint shows, as in other cases, a valid marriage. Eaton v. Eaton, supra; Chamberlain v. Chamberlain, 68 N. J. Eq. 736, 62 Atl. 680, 3 L. R. A. (N.S.) 224, 111 Am. St. Rep. 658, 6 Ann. Cas. 483.

3. It is further insisted that the proof relied upon to show the adultery of the defendant would convict the defendant of the crime of bigamy, and the stronger presumption of the defendant's innocence of crime overcomes the presumption of the marriage of the parties from cohabitation and repute alone. We fail to appreciate the argument that the marriage of the parties is based upon habit and repute alone. The plaintiff declares on an actual marriage, illegal at the time of its solemnization, it is true, but became legal by virtue of the removal of the impediment and continued matrimonial cohabitation. If plaintiff's marriage to defendant be thus established, and the defendant entered into a subsequent marriage with Emily James and cohabited with her as man and wife, he is certainly guilty of adultery. The rule of presumption of the defendant's innocence in such case is not inflexible or to be applied baldly to every conceivable state of facts. The presumption at most is rebuttable, and its proper application depends upon the attending facts and circumstances of the particular case. Whether the presumption is one of law or fact it is not necessary to decide, because, as stated, in either case it is rebuttal. We conclude that the force of the presumption of the defendant's innocence in cohabiting with Emily James under a subsequent and an actual marriage is not so strong as to be or become a fixed rule of law that may be taken advantage of by demurrer to a complaint which alleges the defendant's subsequent marriage to Emily James to be an adulterous act.

4. The second and third assignments of error are

that the court, after trial had and its decision rendered, erred in not requiring plaintiff, upon motion of defendant, to amend her pleading and proof and the insufficiency of the evidence to support the finding that after the impediment to their marriage was removed the parties entered into a contract of marriage or presently agreed to take each other as man and wife and continued to live as man and wife pursuant to said agreement until the year 1910. There is no doubt that this particular part of the finding is in variance with the pleading, and may be said to be clearly outside the issue; but the fact that a finding has been made outside the issue does not warrant the granting of a new trial. Such an objection is available only on appeal from the judgment. Power v. Fairbanks, 146 Cal. 614, 80 Pac. 1075. We therefore shall consider these assignments upon the theory that the pleadings and the findings do not support the judgment. We are in entire accord with the statement made by counsel that there is no evidence whatever to support the finding that the parties after the removal of the impediment to their marriage contracted or presently agreed to take each other as man and wife and continued to live together as such pursuant to their agreement. This finding, as above stated, is in variance with the pleading and outside the issue. It is unwarranted and will be treated as a nullity. Deaner v. O'Hara, 36 Colo. 476, 85 Pac. 1123; Boothe v. Bank, 47 Or. 299, 83 Pac. 785; O'Brien v. Drinkenberg, 41 Mont. 538, 111 Pac. 137; Kimball v. Success Co., 38 Utah, 78, 110 Pac. 872.

5. But in view of the other findings, not disputed, we are of the opinion that the unauthorized finding is not prejudicial. With it stricken out and disregarded, it is undoubtedly true that the remainder of the finding is clearly within the issue, and there is no lack of evidence to support it.

If there are findings to support the judgment, and these findings are supported by the evidence, it is immaterial that there are other findings which the evidence

does not support.    McKibbin v. McKibbin, 139 Cal. 448, 73 Pac. 143.

6.    But it is in effect argued that this rule of practice should not be indulged here, because the trial judge based his decision upon the single finding that after the impediment was removed the parties agreed to take each other as man and wife.    We are unable to agree with this view of the finding.    What the individual opinion of the trial judge may have been as to the amount of evidence required to transform cohabitation, illegal in its origin, into actual matrimony, may be of some doubt, but from our examination of the entire evidence, read in connection with the court's decision, we are of the opinion that the unobjectionable findings are the ones which in the opinion of the trial judge control the judgment.    We should hesitate to say that a court would be so indifferent to a fundamental rule of pleading as to arbitrarily attempt to grant relief on an entirely different state of facts and which involved different principles of law from those stated in the pleading.

It is further insisted that, the parties being domiciled in the State of California at the time of the alleged removal of the impediment to their marriage, under the laws of California (section 55, Civil Code, as amended by Stats. 1895) nothing short of an actual contract of marriage, as distinguished from the mere presumption which arises from cohabitation and repute following the removal of an impediment, would suffice to support this action.    We are of the opinion that the evidence supports the finding that the parties lived and cohabited together as husband and wife in the State of Nevada prior and subsequent to the date of the removal of the impediment to their marriage, and the law of Nevada controls.    Parker v. De Bernardi, supra.

7.    The writer of this opinion is impressed that the plaintiff brought her suit not so much to obtain the personal benefits of a divorce but to receive its incidents— a division of the defendant's separate property, acquired

by him several years after his separation from the plaintiff as heir and distributee of his deceased father's estate, alleged to be of the value of $40,000 or $50,000. The defendant, however, does not plead as a defense the insincerity of the plaintiff or her lack of good faith. Therefore the writer yields to the majority of the court, who take the view that the matter of the defendant's innocence in contracting the marriage with Emily James, the plaintiff's sincerity, and her laches all entered into the merits of the case and are presumed to have been weighed and considered by the trial court in arriving at its ultimate conclusion, and this court will not disturb the decree.

The marriage status of the parties having been established, and being of the opinion that the evidence is sufficient to justify the conclusion of the trial court, we affirm the decree of divorce, and leave that portion of the judgment that purports to award to the plaintiff permanent alimony of $125 per month to be considered on the plaintiff's appeal from that portion of the judgment.

## ON REHEARING

By the Court, COLEMAN, C. J.:

While on the original hearing in this matter some question as to the pleadings was urged, it was not renewed in the petition for a rehearing, and we shall content ourselves on this point by saying that the pleadings on the part of the plaintiff in the case are far from models. However, as the case was tried on its merits, with the evident idea on the part of both parties that only one question was involved, viz, "Is the plaintiff the lawful wife of the defendant?" we feel that we should devote no consideration to the question of the pleadings, beyond stating generally that they are sufficient to support the judgment. It may be said that none of the attorneys now in the case were connected with it at the time the issues were being made up. We will state briefly the salient points in the case:

In the year........, Allen L. Clark was married to Mary

E. Clark. Thereafter, and on August 6, 1892, believing he had been divorced from Mary E. Clark, he entered into a ceremonial marriage with Phœbe Boswell Clark, the plaintiff in this action, and continued to live and cohabit with her as her husband, and to publicly acknowledge her to the world as his wife until February, 1910, when he left her. Though a suit for divorce had been instituted by Mary E. Clark prior to the ceremonial marriage to Phœbe Boswell Clark, through neglect or delay of some kind the decree of divorce was not entered until 1893, after the ceremonial marriage to Phœbe Boswell Clark. The plaintiff did not become aware of the prior marriage of the defendant until several years, when both she and defendant learned that the latter had been divorced from Mary E. Clark in 1893, which we think it safe to say was at least three or four years prior to the desertion of the plaintiff by the defendant in February, 1910. In February, 1910, the defendant entered into a ceremonial marriage with Emily L. Clark, who died without issue prior to the bringing of this action. The decree in the case found the facts to be substantially as above stated, and specifically found:

"That the said parties intermarried at Winnemucca, Nevada, on the 6th day of August, 1892; that at the time of the marriage the defendant had a wife living in the State of California, who had commenced in that state a proceeding against the defendant on the 20th day of July, 1892, and on the 10th day of April, 1893, a minute order was entered in that proceeding, granting to the defendant's then wife, Mary E. Clark, a divorce, and on March 6, 1906, a decree of divorce absolute was signed and entered; that at the time of the marriage between plaintiff and defendant the plaintiff had no knowledge of any other woman claiming to be the wife of defendant; that said marriage was entered into in good faith, and that during all the times from said date of marriage and up to about the year 1910 the plaintiff and defendant lived and cohabited as husband and wife, and held themselves out to the world as such

husband and wife during all of said times; that during said period of time a child was born to the marriage, which died; that the parties lived together as husband and wife and held themselves out to the world as such in the States of California and Nevada after the marriage of Mary E. Clark and defendant had been annulled; that a marriage contract was entered into between the plaintiff and the defendant after the impediment to the defendant's marriage was removed by the divorce which was granted to defendant's former wife in California, and that said parties continued to live together as husband and wife pursuant to said agreement until the year 1910, when defendant left the plaintiff in the State of California, came to Reno, Nevada, and there on the 16th day of February, 1910, entered into a supposed marriage contract with and was wrongfully and unlawfully married to one Emily James; that plaintiff and defendant ever since said marriage have been, and now are, husband and wife."

Counsel for appellant, in their original brief, as well as in their petition, and upon the oral argument, made a vigorous assault upon that portion of the findings wherein it is held that a marriage contract was entered into between the parties after the decree of divorce had been entered in the said suit of Mary E. Clark v. Allen L. Clark. Strenuous objection is taken by appellant to the statement of the law laid down in the former opinion in the following language:

"We accept and reaffirm the general rule that, if parties desire marriage and do what they can to render their union matrimonial, but one of them is under a disability, their cohabitation thus matrimonially meant, and continued after the disability is removed, will, in law, make them husband and wife from the moment that such disability no longer exists, although there are no special circumstances to indicate that the parties expressly renewed their consent or changed their mode of living after the removal of the impediment."

The serious objection urged to this statement goes

to the language that the conduct in question "makes them husband and wife." Counsel say:

"It is most earnestly contended that the text quoted and applied by this court does not correctly state even the 'general rule' of law; that the mere fact of cohabitation after the disability is removed does not 'make them husband and wife'; that such statement, as an unqualified abstract proposition of law, is not only not the general rule, but is contrary to the overwhelming, if not the unanimous, voice of authority; that the true rule would, in the excerpt quoted, substitute for the words 'make them man and wife' the words 'raise a presumption or inference that the parties agreed to be man and wife.' "

It is evident that the drafter of the former opinion, in using the words "make them husband and wife," was speaking relative to the particular case, rather than with the view of laying down an abstract rule of law. However, we may say that there are reputable authorities holding that, where parties in good faith enter into a ceremonial marriage and cohabit as man and wife for several years, and then learn that at the time of such ceremonial marriage the husband had a wife living, and that such former wife procured a divorce about a year after the second marriage, and after learning of the removal of such impediment the parties continue to cohabit as man and wife and hold themselves out to the world as such for a period of years, the court may presume from such conduct that a contract of marriage was entered into after the parties learned of the removal of the impediment. But in view of the facts in this case, and of the finding of the trial court, we do not deem it necessary to determine this point.

1, 2. The trial court found that, after plaintiff and defendant had discovered that the plaintiff was married at the time of the contracting of the ceremonial marriage between them, they entered into a contract of marriage. Marriage is a civil contract, into which

parties who are competent may enter, either through the performance of a ceremonial marriage or through a mutual agreement between the parties to be husband and wife in præsenti, subsequent cohabitation as husband and wife, and the holding out to the world of each other as such. Whether or not such a contract was entered into and such cohabitation indulged in between the parties is not a matter of law, but merely a matter of fact, to be determined from the circumstances of the particular case, and the trial court was controlled by the evidence and the circumstances presented; and if there is sufficient evidence in the record to sustain the finding above mentioned, it is our duty to uphold the same and affirm the judgment.

Does the evidence justify such action? It is conceded that at the time of the performance of the ceremonial marriage between the parties hereto they desired to contract a valid marriage, and believed that they were competent to contract marriage, and in good faith did all they could to enter into a valid marriage contract, and thereafter, and until the learning of the impediment, cohabited together, and held each other out to the world as husband and wife. So much, we say, is admitted. The dispute exists purely as to whether or not, after learning of the divorce of the defendant, a contract of marriage was entered into between the parties. We think it clearly appears from the evidence that after the parties had learned of the removal of the impediment, and up to February, 1910, they continued to cohabit and hold each other out to the world as husband and wife. In fact, we do not believe this is questioned. In any event, the parties even lived together as such for a while with the defendant's mother in Santa Rosa, Calif., and in July, 1899, shortly before they were so living with his mother, the plaintiff gave birth to a daughter, which subsequently died, at the residence of defendant's mother. A picture of the child is an exhibit in the case, upon which is pasted a newspaper clipping containing a notice of the death of the child, in which its name is given and its parentage stated

as being Mr. and Mrs. Allen L. Clark. The undisputed testimony is that the defendant cut out the clipping and gave it to his mother, and that she pasted it upon the picture of the child the second day after the funeral. The testimony shows, also, that the night before the defendant left the plaintiff a little party was given for him, that he gave no intimation that he did not intend to return to the plaintiff, and that in fact it was understood that he was simply going away on a vacation.

Relative to the entering into a contract of marriage between the parties subsequent to their learning of the divorce in favor of Mary E. Clark in 1893, the plaintiff testified:

"Q. After you found that there had been a decree of divorce of the first wife, and that was subsequent to your marriage in Winnemucca, was there any talk between you and Mr. Clark about another formal marriage between yourself and him? A. No, sir.

"Q. Didn't you say to Mr. Clark that you and he ought to go and be remarried before a minister or a justice of the peace? A. That was later than that.

"Q. When did that occur? A. Four or five months later than that.

"Q. What was that conversation? A. I didn't feel that I had been justified of living with Mr. Clark after he found out how that marriage was.

"Q. What did you say to him on that occasion? A. I can't just remember; not much of anything.

"Q. The substance of it? A. I can't just exactly bring to my memory just what it was.

"Q. You remember there was some talk about it, was there not? A. Yes.

"Q. Do you remember what Mr. Clark said about it? A. He was anxious for me to go and get married over again.

"Q. What did he say about it? A. Well, he said that we better go and get married again; that the folks wouldn't really like it, and it would put me in a better light.

"Q. Why didn't you do that? A. The time we started

I took down sick, and after I got up there was no more said about it.

"Q. How long were you sick?  A. Six weeks.

"Q. What was the nature of your illness?  A. Appendicitis.  *  *  *

"Q. Just tell the court how you came to live with Mr. Clark.  A. Mr. Clark didn't want me to separate from him; he said that I was his wife and always would be his wife.

"Q. He told you that after you had learned about this decree?  A. Him and I went both together, but I didn't pay much attention to it.

"Q. Did you learn at that time that a divorce had been granted in 1893?  A. Yes.

"Q. You got the information at that time?  A. Yes; because Mr. Clark looked over it, and he told me that.

"Q. After learning that the divorce decree had been granted, did your relations toward each other, your conduct and actions and mode of living, conform to what they had been?  A. Yes, sir; just exactly the same; nothing was different.  *  *  *

"Q. Mrs. Clark, after you learned about this divorce decree and a former marriage, did you at all the times after that time live with the defendant under the agreement that you were husband and wife?  A. Yes.

"Q. How did you live?  A. We always lived as man and wife.

"Q. Did I understand you to say that Mr. Clark insisted that you were his wife and always would be? A. Yes, sir."

The defendant, in rebuttal to this line of evidence, denied that there was any agreement entered into after the impediment had been removed.  Among other testimony, he gave the following:

"Q. Give the conversation on both sides as near as you can remember; if you can't remember, simply say so.  A. Well, I just said we won't get married again; that was all.

"Q. Was there any further discussion about that

matter? A. Not very much; I don't remember how much, it was so long ago.

"Q. How many times since that time have you and the plaintiff in this action talked over the question of the divorce from your first wife? A. Well, I don't remember that, Judge, how many times.

"Q. Do you remember of ever talking it over with the plaintiff in this case, except at that time at Sacramento? A. That is all; at the time she discovered it.

"Q. What was the attitude or actions of the plaintiff in this case, when she told you about the record there at Sacramento? A. Well, she felt peeved about it; that was all. Didn't like the idea of living this way without being married over again. * * *

"Q. You continued to live with her as your wife down to 1910, did you not? A: Yes; I don't remember the date, but quite a while.

"Q. You continued to live with her until you came to Reno in 1910, just prior to the 22d day of February, when you married Mrs. Clark? A. Yes. * * *

"Q. Isn't it a fact, Mr. Clark, that from that date down to the time that you came to Reno in 1910, that you continued to live with Mrs. Clark as her husband? A. Yes; I lived with her; that is right.

"Q. And she called you husband, and you called her wife? A. Well, we didn't call it that way; we just said 'Phœbe' and 'Al.'

"Q. Isn't it a fact that you were known to all her friends and relatives—— A. I guess so. * * *

"Q. And the relations that have existed between you and the plaintiff in this case since 1893 down to 1910 were precisely the same as they were from your marriage up to 1893, were they not? I will ask you if there was any change in your manner of living. A. No; just the same. * * *

"Q. When you left Mrs. Clark, the relations were perfectly friendly and cordial? A. Yes; always have been.

"Q. She has always treated you as a wife would treat the husband while you lived together? A. Yes, sir.

"Q. Her conduct has been good toward you, has it not? A. Yes, sir.   *   *   *

"Q. Mr. Clark, I am going to ask you again if, at the time this child was born, did you live in the house with your mother? A. Not when the child was born.

"Q. Did you live in the same town where your mother lived? A. Same town; yes, sir.

"Q. Up to a short time before you had occupied the same house? A. Just before the baby died, we moved over to my mother's."

After the death of the child, the defendant went, in company with the plaintiff, to its grave, and with his own hand put its name—Allie Virginia Clark—upon a slab at the head of the grave.

As stated, it will be seen that the sole dispute as to any material matter of fact between the plaintiff and the defendant was as to the entering into a new marriage contract after the discovery of the removal of the impediment. On this point the plaintiff testified flatly that the parties lived together, after they had learned of the removal of the impediment, under the agreement that they were husband and wife. In the case of Holabird v. Atlantic Insurance Co., 12 Am. Law Register (N.S.) 566, Fed. Cas. No. 6587, in which the question was involved as to whether or not a second marriage contract had been entered into between the parties after the removal of the impediment, the court instructed the jury as follows:

"The attention of the jury is directed to the difference between a mere attempted recognition of a past void marriage and a subsequent expression of mutual and then present consent to be husband and wife. The subsequent marriage may be proved by habit and repute, if the evidence thereof satisfies the jury that the parties had mutually agreed to become husband and wife, in good faith, and cohabited thereafter as such."

3. That the trial court rejected the testimony of the

defendant on that point, and believed that of plaintiff, is evident. This it had a perfect right to do. Dixon v. Miller, 43 Nev. 280, 184 Pac. 926. We think the conduct of the defendant, the manner of living of the parties, as shown by the undisputed evidence, and all the circumstances, constitute corroborative evidence supporting the testimony of the plaintiff.

4. That such a marriage contract, followed by cohabitation as husband and wife, such as is shown by the record is sufficient to constitute a common-law marriage, and cannot be doubted. Parker v. De Bernardi, 40 Nev. 361, 164 Pac. 645.

But aside from the view we have expressed, we think the judgment should be affirmed upon another ground. The defendant admits a course of conduct, a manner of living with the plaintiff after the removal of the impediment, which shows clearly that he must have regarded himself as the husband of the plaintiff, to all intents and purposes. She had a perfect right to assume, as did his mother, that he was accepting her as his wife in truth and in fact. He admits that plaintiff was kind and good toward him. Even had he not entered into the second marriage contract with her, it was his evident intention, until he became enamored of Emily James Clark, that she should regard him as her husband.

5. In view of the fact that this is purely a contest between the parties, we are satisfied, from the facts, that the defendant should be held estopped to deny that he is the husband of the plaintiff. The instant case, so far as the defendant's conduct and situation is concerned, is similar to that of Mason v. Mason, 101 Ind. 25, where it is said:

"If the appellant intermarried with the appellee in ignorance of the inhibition resting upon her, he might, doubtless, within a reasonable time have procured an annulment of the marriage. But it is not averred that he was ignorant of this inhibition, and we must hence assume that he was not ignorant of it. The answer impliedly admitted that the appellant, for more than

two years after the decree against Butcher had become absolute, and with full knowledge of all the facts, had lived and cohabited with the appellee as her husband, and that the separation did not result from any supposed irregularity in their marital relations. The facts thus admitted amounted to an unconditional ratification of the marriage of the appellant with the appellee, and to a full recognition of its validity. The appellant was, consequently, estopped from setting up the unlawfulness of the marriage in the first instance, as a defense to the complaint against him for a divorce"—citing authorities.

For the reasons given, it is ordered that the judgment be affirmed.

DUCKER, J.: I concur.

SANDERS, J., concurring in the order:

Uninfluenced by any matter or thing contained in the opinion of the Chief Justice upon the rehearing of this cause, I reaffirm the decree of divorce, for the reasons stated in my former opinion.

I consented to a rehearing of the case because, upon most careful consideration of the petition therefor, I felt that there possibly was a reasonable probability that I had permitted myself to fall into error in my holding to the effect that parties who had entered into a formal marriage, which was invalid because the man had a wife living, continued cohabitation after the man's former wife secured a divorce, though no new marriage agreement or change in relations was shown, establishes a valid marriage.

Upon further consideration of this proposition, as qualified and limited by the particular facts upon which it is predicated in this case, I reach the conclusion that, if there is virtue in the doctrine established by common-law marriages, simple justice and sound morals impel me to adhere to the proposition upon this rehearing. I

also reiterate what was strongly stated in my former opinion, that no court, nisi prius or appellate, is authorized to make a finding at variance with the pleadings and outside of the issue. Such finding and decision should be, and is, treated as a nullity.

I concur in the order.