### HESS v. PETTIGREW.

1. MARRIAGE—CIVIL CONTRACT—PUBLIC POLICY.
   While marriage is civil contract, it is not pure private contract, but is affected with public interest and by public policy.

2. SAME—SPECIAL TREATMENT AS CONTRACT.
   Status of children, preservation of home, private morality, public decency, and the like, afford ample grounds for special treatment of marriage as contract, by statute and decision.

3. SAME—STRONG PRESUMPTIONS SUSTAINING VALIDITY.
   In recognition of public and social nature of marriage, courts have cast about it protecting mantle of strongest presumptions known to law sustaining its validity.

4. SAME—VALIDITY FAVORED.
   Any rule concerning it must favor validity of intended marriage if it may be done without violence to essentials of civil contract.

5. SAME—IMPEDIMENT—COMMON-LAW MARRIAGE.
   Generally, where parties engage upon contract of marriage, which is void because one has living lawful spouse, which is unknown to one or both, uninterrupted cohabitation and reputation after removal of impediment will produce valid common-law marriage, although fact of its impediment or of its removal may not have been known to either.

6. SAME—VALID COMMON-LAW MARRIAGE AFTER IMPEDIMENT RE-MOVED.
   Where parties continued cohabitation after impediment to marriage was removed, held themselves out as married and were so accepted, had joint bank account and the like, and in letters written by husband to wife he addressed her as wife and signed as her husband, there was sufficient express statement and present recognition of relationship of marriage, if such were necessary under circumstances, to constitute valid common-law marriage.

As to inference or presumption of marriage from continued cohabitation following removal of impediment, see annotation in 3 L. R. A. (N. S.) 244; L. R. A. 1915E, 91.

As to general characteristics and validity of common-law marriage, see annotation in L. R. A. 1915E, 8.

7. SAME—CONCEALMENT OF FORMER MARRIAGE—FRAUD—DISCOVERY—
   ANNULMENT.

 Generally, spouse's concealment of fact of former marriage is not
fraud justifying annulment, unless discovery of deceit is made
few hours after marriage and no cohabitation has occurred.

8. SAME—EQUITIES—WHEN ANNULMENT NOT WARRANTED.

 That wife concealed from husband fact that she had been pre-
viously married, *held,* not to entitle him to decree of annulment,
where it does not appear that he has compelling equities, that
she was guilty of wilful fraud, or that his feelings were out-
raged by discovery of truth, but on contrary they had lived
happily together for about 12 years, and reasonable inference
is that he is seeking annulment to deprive her of property
which she helped him accumulate.

Appeal from St. Clair; George (Fred W.), J.
Submitted January 6, 1933. (Docket No. 56, Calendar No. 36,966.) Decided March 1, 1933.

Bill by Henry Hess against Alice Pettigrew for
annulment of their marriage. Cross-bill by defendant to establish valid marriage. Decree for plaintiff. Defendant appeals. Reversed, and decree entered for defendant.

*Gordon E. Tappan,* for plaintiff.

*Robert M. Soutar* (*James A. Muir,* of counsel),
for defendant.

FEAD, J. In 1904, defendant was ceremonially
married to John H. Howe at Paisley, Scotland. They
had a son. They separated in 1906, and defendant
cared for the son until 1911, when, because she was
unable to longer support him, he was returned to the
father. In 1912, defendant moved to Canada. In
1914 she came to Port Huron, in 1919 met plaintiff,
and they engaged in a ceremony of marriage performed by a clergyman. They lived together hap-

pily until about 1931, when difficulties arose. On or about April 21, 1931, they separated, and plaintiff filed bill for divorce, defendant answering and filing cross-bill. Later the bill was dismissed and May 21, 1931, plaintiff commenced this suit for annulment of marriage. He had decree.

Howe had obtained a divorce from defendant in Scotland in 1922 on substituted service. Neither party hereto knew of the divorce until the day this bill was filed. Defendant claims she told plaintiff of her former marriage before their ceremony in 1919, that she did not know her status, and some weeks later he told her he had investigated and found that Howe had obtained a divorce. Plaintiff denied any knowledge of defendant's marriage to Howe until the day he commenced this suit. The court found with plaintiff on the issue. While we may accept such finding because plaintiff and defendant were the only witnesses and the issue rested on their veracity, the proof was not conclusive. Plaintiff's claim as to the manner in which he discovered the former marriage is not free from suspicion. The parties visited in Scotland in 1924. Plaintiff testified they saw a man on the street whom defendant said was her brother and a hard drinker, and she urged plaintiff to leave lest the man solicit him for money to buy liquor. Plaintiff said the incident of the bibulous gentleman occurred to him after he had filed suit for divorce, seven years later, aroused his suspicion that defendant had been married before, he wrote the American consul at Glasgow for information, and, on receiving copy of the decree, changed his action to annulment. Defendant denied the incident. Plaintiff's account leaves a lurking suspicion that he knew of the former marriage before suing for divorce, and

changed his attack for fear of the hazards of that suit.

After leaving Scotland, defendant heard nothing directly or indirectly about Howe, except that on her visit to Scotland in 1924 her brother told her Howe had moved away some years before. Assuming that defendant did not tell plaintiff of her former marriage before they contracted the ceremony in 1919, nevertheless it does not appear that she contracted marriage with plaintiff knowing she was incompetent to do so, although she was careless in failing to ascertain the facts.

The parties agreed in their testimony that no ceremony or agreement of marriage in words occurred after the Howe divorce. The marriage in 1919 being void *ab initio* (3 Comp. Laws 1929, § 12723), the question is whether a common-law marriage resulted after the Howe divorce from the acts and conduct of the parties. Plaintiff's claim is that there was no present taking of each other as husband and wife after the divorce, with knowledge of the prior marriage and divorce, and intentional purpose to establish a new relationship, and, therefore, they did not marry.

Marriage is a civil contract, but it is not a pure private contract. It is affected with a public interest and by a public policy. The status of children, preservation of the home, private morality, public decency, and the like afford ample grounds for special treatment of marriage as a contract, by statute and decision. In recognition of its public and social nature, courts have cast about it the protecting mantle of presumptions, sustaining validity of marriage, said to be the strongest known to the law. *Doertch* v. *Folwell Engineering Co.*, 252 Mich. 76. Any rule concerning it must favor the validity of an

intended marriage if it may be done without violence to the essentials of the civil contract.

While there is some difference of reasoning and ruling, the decided weight of authority is that where parties engage upon a contract of marriage, which is void because one has a living lawful spouse, which is unknown to one or both, uninterrupted cohabitation and reputation after removal of the impediment will produce a valid common-law marriage, although the fact of the impediment or of its removal may not have been known to either. The principal reasons upon which the rule rests are that the initial relationship was intended to be matrimonial, not illicit, and consent to present marriage evidenced by the ceremony continues from day to day and becomes effective as a present taking in marriage on removal of the impediment. 38 C. J. p. 1297; 18 R. C. L. p. 436; 3 L. R. A. (N. S.) 244, note; L. R. A. 1915E, 91; *Smith* v. *Reed,* 145 Ga. 724 (89 S. E. 815) ; L. R. A. 1917A, 492; *Johnson* v. *Wolford,* 117 Ohio St. 136 (157 N. E. 385); *Cameron* v. *Cameron,* 105 W. Va. 621 (143 S. E. 349); *Sims* v. *Sims,* 122 Miss. 745 (85 South. 73); *Clark* v. *Clark,* 44 Nev. 44, 56 (189 Pac. 676, 194 Pac. 96); *People* v. *Lewis,* 221 Mich. 164.

In this State, in the only case squarely in point, the court divided evenly (*In re Fitzgibbons' Estate,* 162 Mich. 416 [139 Am. St. Rep. 570]), but there are expressions in other decisions favoring establishment of a common-law marriage under the circumstances at bar. *Barker* v. *Valentine,* 125 Mich. 336 (51 L. R. A. 787, 84 Am. St. Rep. 578); *Walsh* v. *Ferguson,* 249 Mich. 539; *Ryan* v. *Randall,* 252 Mich. 501.

After the Howe divorce both parties were competent to contract marriage. In all respects each

considered and treated the other as a lawful spouse, so held out their relationship to the world and they were so accepted. The only questionable element of the relationship is whether they took each presently as husband and wife. The reasoning that the consent and taking manifested by the former ceremony and cohabitation thereunder was a continuing state, renewed constantly and operated as a present taking when the impediment was removed, fits snugly into the law of marriage and accords with the public policy relating to it. If, however, express statement and present recognition of the relationship of marriage be necessary, it is sufficiently found in the instant case, aside from the cohabitation, holding out as married and being so accepted, having a joint bank account and the like, in letters written by plaintiff to defendant after the Howe divorce, addressing defendant as his wife and signing as her husband. *Goodspeed* v. *Goodspeed,* 204 Mich. 44; *Severance* v. *Severance,* 197 Mich. 327; *Peet* v. *Peet,* 52 Mich. 464.

After the Howe divorce the parties were competent and did contract a common-law marriage. Plaintiff's want of knowledge of the former marriage could not affect it unless it was voidable for fraud in defendant's concealing it from him. Such concealment is not fraud justifying annulment. 38 C. J. p. 1302; *Price* v. *Tompkins,* 108 Misc. Rep. 263 (177 N. Y. Supp. 548), affirmed in 190 App. Div. 967 (179 N. Y. Supp. 946). An exception has been made where discovery of the deceit was made a few hours after marriage and no cohabitation had occurred. *Weill* v. *Weill,* 104 Misc. Rep. 561 (172 N. Y. Supp. 589). The present case does not come within the exception, indicate wilful fraud by defendant, nor contain compelling equities in plaintiff. It is not a case where an innocent party has been outraged in his

feelings and seeks freedom from a condition made repugnant by discovery of the truth. Plaintiff sought freedom from a marital tie by way of divorce from his lawful wife. It is not an unreasonable inference that he is seeking annulment to deprive her of property which she helped him accumulate. It is hard to believe that a man, to whom a woman has been admittedly a splendid wife for many years and who tries to cast upon her the stigma of illicit relationship, has been outraged in his feelings by discovering her ancient prior marriage. If an exception should be made to the general rule, it does not apply here.

The decree will be reversed, bill dismissed, and decree entered on defendant's cross-bill declaring validity of the common-law marriage, with costs.

McDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred.