In re Estate of Harry M. Peirce, Deceased. August Wierich Peirce, Appellant, v. Richard K. Peirce et al., Appellees.

Gen. No. 9,642.

filed May 27, 1941.

F. J. CAMPBELL and JAMES L. COBURN, both of Galena, for appellant.

LOUIS A. NACK and DONALD M. EATON, both of Galena, for appellees.

MR. JUSTICE HUFFMAN delivered the opinion of the court.

This case involves the question of who is entitled to administer the estate of Harry M. Peirce, deceased. The said deceased was legally married in the State of Montana, on June 30, 1892, to Theresa Thompson. One child was born of that marriage, the appellant herein.

In 1905, while enroute by train to California, Mr. Peirce became acquainted with a young lady whose home was on a farm near Monmouth, Illinois. He later visited her at her home. In 1907, she went to Mexico where, according to a prearranged plan, she met Mr. Peirce, and there at a place named Gomez Pa Lacois, they contracted a marriage by a religious ceremony. She appears in this record as Era Peirce. From 1907 until 1915, four children were born to these parties, namely; Henry M., Patricia, Richard K., and George C. Peirce.

Harry M. Peirce died in 1939, a resident of the city of Galena, and a citizen of Illinois. Following his death, and upon petition of Richard K. Peirce, a son of the deceased and Era Peirce, letters of administration were issued by the county court of Jo Daviess county to the said Richard K. Peirce. Appellant filed his petition to have such letters revoked on the ground that the person to whom they had issued failed to make

proof of heirship. Appellant claimed that he was the only heir of the deceased. Upon a hearing on appellant's petition, the county court found that the deceased left surviving him Era Peirce as his widow, the appellant herein, and the four above named children which were born to the deceased and Era Peirce. Appellant appealed from that finding to the circuit court where the same finding was made as to the heirship together with judgment that letters of administration had properly issued to appellee as a child and heir of the said deceased.

The position of appellant with respect to the right of appellee to so act arises from the fact that the deceased and Era Peirce were never married, and that appellee was not a son of the deceased born in lawful wedlock.

It appears that after Era Peirce joined Mr. Peirce in Mexico, they lived there for some time; that upon leaving Mexico, they lived in Cuba; and later in New York State, which was followed by a residence in the State of Texas. In 1915, they returned from Texas to Mrs. Peirce's home near Monmouth, to live. After this, Mr. Peirce made trips to various States looking for a new location. One of the States which he visited at that time was the State of Nevada. Mrs. Peirce remained at the home near Monmouth during this period of time. While in Nevada, he instituted suit for divorce against his wife, Theresa Thompson Peirce. She came there and contested the proceedings, which resulted in her securing a divorce from him together with decree for alimony of $25 per month. Sometime following the divorce proceedings, Era Peirce joined Mr. Peirce in Nevada, where she states they remained for three or four weeks, then returning to their home in Illinois. Following their return to Illinois, they settled in the city of Galena. Here they resided until 1920, when they separated,

and Mrs. Peirce and the four children returned to the old home near Monmouth, where they have since continued to live.

It is the position of appellee that upon the decree of divorce being granted in Nevada, the disability theretofore existing was removed, and that immediately and automatically Mr. Peirce and Era Peirce became husband and wife by common law marriage, which status is recognized in that State; and since it was a legal relationship in that State, it therefore became effective in Illinois upon their return here. In this respect, appellee refers to the cases of the *State v. Zichfeld*, 23 Nev. 304, 46 Pac. 802; 34 L. R. A. 784; *Parker v. De Bernardi*, 40 Nev. 361, 164 Pac. 645; and *Clark v. Clark*, 44 Nev. 44, 189 Pac. 676. These are all Nevada cases and announce the rule that, "If parties desire marriage and do what they can to render their union matrimonial, but one of them is under a disability, their cohabitation thus matrimonially meant and continued after the disability is removed will, in law, make them husband and wife from the moment that such disability no longer exists, . . . ." *Clark v. Clark, supra,* page 678. However, in each of the above cases, the parties involved were citizens of the State of Nevada, and not merely sojourning there. Also, it will be observed that when Era Peirce joined Mr. Peirce in Nevada, there was nothing to prevent a legal marriage if they desired to render their union matrimonial. The disability had been removed prior to the time she joined him.

The amendatory Act of 1905, to section 4, chapter 89, on marriages, added the latter part of section 4, as it now exists, which in substance, declares common law marriages null and void unless the contracting parties obtain a marriage license and have the marriage solemnized as required in other cases, and providing that children born to such parties shall be deemed legitimate upon the parents obtaining a li-

cense to marry and being married as provided by statute. This situation is referred to in the case of *Wilson v. Cook*, 256 Ill. 460, where the right of a State to prescribe its marriage laws is announced, and where it is stated on page 466, of the opinion, that there can be no presumption of a common law marriage even though the disability which existed had been removed.

Courts which hold common law marriages to be valid are of those jurisdictions where such marriages are not prohibited by positive law, and they only undertake to lay down a rule of law for citizens of the particular jurisdiction. We are not of the opinion that the law of Nevada, or the cases referred to by appellee, indicate any intent to raise the status of common law marriage in a manner inconsistent or conflicting with the law of marriage prevailing in the State of the actual domicile of the parties. Such a situation would fail to show any governmental interest that was superior to that of the sister State. Therefore we shall consider the sanction of common law marriages by Nevada to be intended to apply only to its own citizens.

Nothing appears here to indicate that during the three weeks Mrs. Peirce was with Mr. Peirce in Nevada, either of them had the intent requisite for the acquisition of a domicile in that State. Considering the station in life of these parties as disclosed by the record, there appears to have been but one State that was closely concerned with the family life following their return from Texas, and that was the State of Illinois. They were not living together in Nevada as citizens of that State at the time the disability was removed. Era Peirce was a citizen of Illinois, and was residing here at such time.

Each State has the right to determine and establish laws regulating and prescribing what shall constitute the marriage relation for its own citizens. Cohabita-

tion meretricious in its origin, cannot be considered to have ripened into a common law marriage in a jurisdiction where the parties were not citizens, but only temporarily residing.

Sentiment and companionship go far in the sum of human lives. It is with sympathy, patience, and understanding that we view the disappointments and sorrows of life. They teach many things not found in books. However, an affirmance of this case, in our opinion, would violate the intent and purpose of the statute of this State.

The judgment is reversed and the cause remanded with directions to grant the petition of appellant to revoke letters of administration issued to appellee.

*Reversed and remanded with directions.*

MR. JUSTICE DOVE specially concurring: I concur in the judgment reversing and remanding this cause.