(No. 26400.—

RICHARD K. PEIRCE, Admr., *et al.* Appellants, *vs.* AUGUSTUS WIERICH PEIRCE, Appellee.

*Opinion filed January 20, 1942—Rehearing denied March 11, 1942.*

186

Louis A. Nack, and Donald M. Eaton, for appellants.

.F. J. Campbell, and James L. Coburn, for appellee.

Mr. Justice Smith delivered the opinion of the court:

This case involves a contest over the right to administer the estate of Harry M. Peirce, deceased. Deceased was twice married and children were born to each union. The contest is between Augustus Wierich Peirce, a son by the first wife, and Richard K. Peirce, a son by the second wife.

The undisputed facts show that deceased was legally married to Theresa Thompson in the State of Montana on June 30, 1892. One child was born of that marriage, the appellee here. In 1905, and while still married to Theresa Thompson, deceased, while en route to California by train, became acquainted with Era Peirce who resided on a farm near Monmouth, Illinois. He subsequently visited her at her home and, in 1907, she went to Mexico, where she met him by prearrangement and they were married by a religious ceremony. Deceased had informed her of his prior mar-

riage, but told her that he had obtained a divorce. Her name is given in the record only as Era Peirce. After two months in Mexico, deceased and his new wife went to Havana, Cuba, where he was employed by a new York firm. After four months in Cuba, they moved to New York, and in December, 1908, to Texas. For the next six years they lived in Texas, and in 1915 returned to Era Peirce's home near Monmouth. From 1908 to 1915, four children were born to Harry M. and Era Peirce.

Leaving Era Peirce in Illinois, deceased went west to look for business opportunities. One of the States which he visited was Nevada, and while there he instituted suit for divorce against Theresa Thompson Peirce. She appeared and filed an answer. This suit resulted in a decree of divorce in favor of Theresa Peirce, and against Harry M. Peirce. By the decree she was awarded $25 a month alimony. Era Peirce, who had been in Illinois during all this time, and knew nothing of the divorce proceedings, at his request joined him in Nevada. Thereafter they remained in that State, living as husband and wife, for about a month during the summer of 1916. Deceased failed to locate a position, and they returned to Chicago where he obtained a job. Thereafter they moved to Pontiac, and in 1917 to Galena, where they lived until 1920. At that time she left him and returned to Monmouth with the children, because he was not supporting her.

Throughout the entire time from 1907 to 1920 deceased represented to the world that Era Peirce was his wife and, by his conduct, that their four children were legitimate; they lived together as husband and wife, except while he was away looking for business opportunities. Era Peirce knew nothing of the Nevada divorce until after his death, when Theresa Thompson Peirce presented a claim against his estate for unpaid alimony.

Harry M. Peirce died in 1939, a resident of Galena. Upon petition of Richard K. Peirce, his son by Era Peirce,

letters of administration were issued by the county court of Jo Daviess county to him. Augustus Wierich Peirce then filed a petition to have such letters revoked on the ground that Richard K. Peirce was not a son and heir of Harry M. Peirce, deceased. The petition was heard and denied by the county court and an order entered, finding that Era Peirce was the widow and that her four children were the children and heirs of Harry M. Peirce. The same result was reached by the circuit court on appeal. That court found and adjudged that Era Peirce was the widow and that as such widow, she, together with appellee, and the four children born to Harry M. Peirce and Era Peirce, constituted his heirs-at-law. On appeal to the Appellate Court for the Second District the judgment of the circuit court was reversed. Leave to appeal was granted by this court.

The sole question involved is whether or not Richard K. Peirce and the three other children of Era Peirce are legitimate children of the deceased. In ruling that they were not, the Appellate Court placed its decision upon the fact that Era Peirce and deceased were never legally married, since at the time of their marriage deceased had not yet been divorced from his first wife. Appellant, Richard K. Peirce, does not contest the fact that the marriage of Era Peirce to deceased was originally void, but argues that under the Nevada law, the marriage became valid when the disability was removed by the divorce in 1916, and that the children thereupon became legitimate children of Harry M. Peirce.

In Illinois it was provided by statute, both prior and subsequent to the passage of the Probate act, for the legitimization of children born out of wedlock where the parents subsequently intermarry and the father acknowledges his paternity. (Ill. Rev. Stat. 1939, chap. 39, par. 3; Ill. Rev. Stat. 1941, chap. 3, par. 163.) Appellee contends that the only marriage which existed between Era Peirce and de-

ceased was a common law marriage, and that common law marriages are no longer recognized in Illinois, even though made outside of the State and valid where entered into. Appellants insist that a common law marriage existed in Nevada which must be recognized by the courts of Illinois.

The real question, however, is the legitimacy of the children, not the validity of the marriage; the legality of the marriage is only important as affecting the question of legitimacy. It was held in *McNamara* v. *McNamara,* 303 Ill. 191, that the status of a child as heir depends upon his legitimacy, as determined by the law of the State in which he has his domicile, and not by the law of Illinois. Hence if, subsequent to deceased's divorce from his first wife, his children were legitimatized by the law of Nevada, they thereupon became legitimatized in Illinois. It is not against the public policy of this State to recognize legitimacy conferred by the law of Nevada, although the method whereby legitimacy is there obtained is not available in Illinois. As was said in *McNamara* v. *McNamara, supra,* "We must recognize the status of John Hamilton McNamara as created by the law of California to be legitimate from his birth, and that being so, he is the sole heir of his father and entitled to the real estate in this State. This is not prohibited either by any express provision of law or by public policy. It is not contrary to public policy as manifested by statutes. Section 15 of the act concerning bastardy (Harker's Stat. p. 349) provides that if the mother of any bastard child and the reputed father shall at any time after its birth intermarry, the child shall in all respects be deemed and held legitimate. That rule was applied, in connection with the Statute of Descent, in *Hall* v. *Gabbert,* 213 Ill. 208. The legislatures of California and of this State, declaring public policy, have provided that a father may make his illegitimate child legitimate, and the method, whether by marrying the mother or as provided in the California statute, is of no importance. The stat-

utes have no tendency to encourage illicit relations and have the only object of permitting a benefit or act of justice to the unfortunate. The public policy of the States is the same."

Under the law of Nevada, as interpreted by the highest court of that State, it appears that Era Peirce and deceased were lawfully married, and their children legitimate. Nevada recognizes as valid common law marriages. *State* v. *Zichfield,* 46 Pac. 802, 23 Nev. 304; *Parker* v. *DeBernardi,* 164 Pac. 645, 40 Nev. 361; *Clark* v. *Clark,* 189 Pac. 676, 44 Nev. 44.

We have no doubt that under the Nevada law a marital status existed. It was said by the Supreme Court of Nevada, in *Clark* v. *Clark, supra:* "If the parties desire marriage and do what they can to render their marriage matrimonial, but one of them is under disability, their cohabitation thus matrimonially meant and continued after the disability is removed will, in law, make them husband and wife from the moment that such disability no longer exists although there are no special circumstances to indicate that the parties expressly renewed their consent or changed their mode of living after the removal of the impediment, and even though the removal is unknown, continued cohabitation thereafter evidences consent to live in wedlock. * * * Taking the facts as stated in the complaint, and applying the law to them, we are of the opinion that, assuming the ignorance of the plaintiff of the invalidity of their marriage with the defendant during the whole period of their cohabitation, yet after the removal of the impediment to their marriage they became married persons, and the complaint shows, as in other cases, a valid marriage. *Eaton* v. *Eaton,* 66 Neb. 676, 60 L. R. A. 605; *Chamberlain* v. *Chamberlain,* 68 N. J. Eq. 736, L. R. A. (ns) 244."

We are not called upon to recognize the common law or however designated marriage of Era Peirce and de-

ceased in Nevada as valid, contrary to the public policy of this State. We do, however, recognize the effect of the attainment of marital status under the laws of Nevada insofar as it operates to make the children legitimate. (*In re Tormey's Estate*, 256 Pac. 535.) To do so, as was pointed out in the *McNamara case,* is in harmony with, rather than in contravention of, the public policy of Illinois.

The cases of *Wilson* v. *Cook,* 256 Ill. 460, and *Stevens* v. *Stevens,* 304 Ill. 297, are cited for the proposition that a common law marriage is void in Illinois, even if performed in some other jurisdiction. The rule, however, is limited to the situation where the parties whose marriage is sought to be upheld in Illinois were, at the time of the marriage, domiciled in Illinois, although the marriage occurred in another State. The general rule of conflict of laws is that the marital status is governed by the law of the State of domicile. *Longhran* v. *Longhran,* 292 U. S. 216, 54 Sup. Ct. 684; *People* v. *Shaw,* 259 Ill. 544; 35 Am. Jur. (Marriage) 286, par. 170.

As was said in *Stevens* v. *Stevens, supra,* "The status of citizens of a State in respect to the marriage relation is fixed and determined by the law of that State, but marriages of citizens of one State celebrated in another State which would be valid there are generally recognized as fixing the status in the State of the domicile with certain exceptions, such as marriages which are incestuous according to the generally recognized belief of Christian nations, polygamous, or which are declared by positive law to have no validity in the State of the domicile. Such marriages contracted between the citizens of a State in other States in disregard of the statutes of the State of their domicile will not be recognized in the courts of the latter State though valid where celebrated." Where the parties are domiciled in another State at the time of contracting a common law marriage, valid in such State, such marriage will be considered valid here upon their removal to Illinois.

*Young* v. *Young*, 213 Ill. App. 402; *Acklin* v. *Employees Benefit Ass'n,* 222 id. 369.

Do the facts here indicate that at the time the divorce was granted in Nevada, deceased and Era Peirce were domiciled in Illinois? We do not think so. The evidence shows that they returned to Illinois from Texas in 1915 because of his failure in business. She sojourned here temporarily while he looked for a new business opportunity. No intention to make Illinois their residence appears from the record. The domicile is the place where a person lives and has his true, permanent home, to which, whenever he is absent, he has an intention of returning. (*Holt* v. *Hendee,* 248 Ill. 288.) The question of a person's domicile is largely one of intent. (*Cobb* v. *Smith,* 88 Ill. 199.) Era Peirce was temporarily sojourning at the home of her relatives in Illinois, while Harry M. Peirce was looking for a location in which to establish a business of some kind or to seek employment. There is no evidence in the record which indicates that he gained a residence or a domicile in Illinois, or had any intention of establishing a home here until some years later. After leaving his wife and children at her parental home he left them intending to establish a home in Nevada. Era Peirce had no intention of remaining in Illinois until after the failure of the Nevada venture. Her domicile, during the summer of 1916, if anywhere, was in Nevada. She joined her husband, at his request, in that State, for the purpose and with the intent of making their home there. They there lived together as husband and wife and represented themselves to be such.

Under the laws of Nevada the impediment which prevented Harry M. Peirce from entering into a lawful marriage with Era Peirce, being removed by the divorce from his former wife, the legal status between them became that of husband and wife. This marital status, there established by Nevada law, will be recognized by the courts of Illinois. His recognition thereafter of the children born

to Era Peirce, as his own, rendered them legitimate. They must, therefore, be regarded as his children under our own statutes above referred to.

The Appellate Court erred in reversing the judgment of the circuit court. The judgment of the Appellate Court is reversed and the judgment of the circuit court is affirmed.

*Appellate Court reversed;*
*circuit court affirmed.*