**In re the MARRIAGE OF Patricia Probert GEBHARDT and Freddie L. Gebhardt Upon the Petition of Patricia Probert Gebhardt, Petitioner–Appellee,**

**And Concerning Freddie L. Gebhardt, Respondent–Appellant.**

**No. 86–1762.**

Court of Appeals of Iowa.

May 31, 1988.

Barry S. Kaplan of Fairall, Fairall, Kaplan & Hoglan, Marshalltown, for respondent-appellant.

Donald J. Juhl, Nevada, for petitioner-appellee.

Considered by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

DONIELSON, Judge.

The respondent appeals from a finding by the district court that a common-law marriage existed between him and the petitioner, who has filed for dissolution. We affirm.

Petitioner (Patt) moved into the home of the respondent (Freddie) in 1970 and lived with him continuously for about sixteen years. On March 14, 1986, Patt filed for dissolution of an alleged common-law marriage to Freddie, who denied that such a marriage existed. The action was bifurcated and the only issue tried was whether or not a common-law marriage existed. The court found that it did. Freddie has appealed.

Our scope of review is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R.App.P. 14(f)(7).

The three elements necessary to find a common-law marriage are (1) present intent and agreement to be married, (2) continuous cohabitation, and (3) public declaration that the parties are husband and wife. *In re Marriage of Winegard*, 278 N.W.2d 505, 510 (Iowa 1979). The burden of proof lies on the party asserting the existence of a common-law marriage. *Id.* The party carrying this burden of proof must prove all the elements of such a common-law marriage by a preponderance of the evidence. *In re Marriage of Grother*, 242 N.W.2d 1 (Iowa 1976). *Cf. State v. Ware*, 338 N.W.2d 707, 711 (Iowa 1983) (proof must be by a preponderance of clear, consistent, and convincing evidence). Proof of cohabitation, as well as evidence of conduct and general repute in the community where the parties reside, tends to strengthen the showing of present agreement to be husband and wife, as well as bearing upon the question of intent. *Gammelgaard v. Gammelgaard*, 247 Iowa 979, 980, 77 N.W.2d 479, 480 (1956). Newspaper articles and other publications are evidence of a general reputation as bearing on the question of repute. *Id.* at 987, 77 N.W. 2d at 484.

A person may be entitled to marital rights if his or her intention is to be married, even though the other person's intention is not the same, provided they cohabit and provided the conduct of one person justifies the other to believe he or she intended to be married. *In re Marriage of Winegard*, 257 N.W.2d 609, 616 (Iowa 1977) (citing *McFarland v. McFarland*, 51 Iowa 565, 570, 2 N.W. 269, 273–74 (1879)). Continuous cohabitation and the declaration of holding out to the public that the parties are husband and wife constitutes circumstantial evidence which tends to create a fair presumption that a common-law marital relationship exists. *Id.* at 617. Introduction of one party by the other as a wife or husband is in and of itself acknowledgment of marital relation. *In re Fisher's Estate*, 176 N.W.2d 801, 807 (Iowa 1970).

Freddie agrees with the district court that the facts involved are undisputed. However, in his appeal, he contends that a common-law marriage was found only as a means of avoiding what the court said would otherwise be a "great injustice" to the petitioner. He argues that such a finding constitutes error because the couple did not show a present intent to be husband and wife and did not hold themselves out to the public to be married. In support thereof he relies on the following: (1) the rings purchased in 1974 were not wedding rings as Patt contends, but were merely gifts; (2) the sales bill of their business in 1982 which refered to "Freddie & Patt Gebhardt" was a "mistake;" (3) Patt referred to herself as Patt Probert in 1978 when she saw a physician; (4) the parties filed income tax returns listing themselves as single persons; (5) Patt filled out job applications under the name of Patt Probert, a single person; (6) Patt's title to a recently-purchased vehicle listed Patt Probert as the owner; (7) Freddie conveyed real estate as a single person; (8) Patt purchased stock from under the name of Patt Probert; (9) Patt's driver's license continued to be in the

name of Patt Probert; and (10) Patt held herself out to be Patt Probert in a federal lawsuit where she was listed as a defendant.

■ We have reviewed the other evidence in the record and find, as the district court did, that it clearly and convincingly demonstrated that the parties were holding out to the public that they were husband and wife. The record discloses the following bearing on the existence of a common-law marriage: (1) Patt's intent and belief with respect to her relationship with Freddie; (2) opinions of various witnesses that the community generally regarded the parties as married; (3) continuous cohabitation by the parties for sixteen years; (4) Freddie's acquiescence in Patt's use of his name and her representations to the community that they were married; (5) Patt's receipt of a diamond engagement ring and wedding ring from Freddie; (6) payment by Freddie of charge accounts incurred by Patt as Mrs. Freddie Gebhardt; (7) mail received and sent by the parties as Mr. and Mrs. Freddie Gebhardt; (8) payment of family and business debts from a single checking account on which both parties were authorized to draw checks, including Patt's authorization to sign Freddie's name to the checks; (9) joint vacations, with the parties' purchase of airline tickets under the names of Freddie and Patt Gebhardt; (10) Freddie's introduction of Patt as his wife to friends and business associates; (11) the parties' operation of a business together; (12) a joint AAA membership listing Patt Gebhardt as a member; (13) a newspaper publication circulated throughout the area which contained an auction sale bill listing the owners as Feddie and Patt Gebhardt; (14) Freddie's preparation of a will which provided for Patt in much the same way as one would provide for a spouse; and (15) reference to Patt as an "in-law" by Freddie's mother and sister.

The fact Patt declared herself as single on tax returns does not defeat her claim that a common-law marriage existed. "Considered alone, the tax information would weigh against the finding of a common-law marriage, but the remainder of the record sufficiently overcomes the contrary inferences which might be drawn." *Winegard,* 278 N.W.2d at 511. We find the tax returns were filed by the parties as single persons in an effort to facilitate Freddie's early retirement program.

Nor do we place emphasis on the fact Patt has signed her maiden name on various documents. The district court made the following comment regarding Patt's use of her maiden name:

> Some of the inconsistencies that appear seem to be the result of lack of sophistication by Patt and Freddie in respect to what was necessary to change their status in respect to these "official" documents. It appears to the Court that both parties thought that some of these documents could only be changed after a "ceremonial" marriage had taken place. It appears to the Court very doubtful that either party had much real knowledge about "common-law" marriage.

The district court did not believe Freddie when he testified the rings he bought were not intended as engagement and wedding rings. In addition, the court addressed the credibility of both parties in the following remarks:

> It might at this point be appropriate for the Court to point out that the Court watched both Freddie and Patt during extensive periods when each occupied the witness stand. Based upon the Court's observation of both witnesses and the manner in which they responded to questions, the Court is convinced that Freddie was a much less reliable witness, that he often resisted admitting certain matters until after extensive questioning had flushed out the answer and, on the whole, the Court finds that Patt made a much more believable witness in those areas where the testimony of the two parties diverge than did Freddie. On the other hand, the Court finds it quite surprising that a very substantial portion of the testimony of each party factually coincided.

The evidence for the most part is undisputed. We give weight to the fact findings of the trial court, especially in considering

the credibility of the parties, where the evidence appears to be in dispute. We find Patt has successfully carried her burden to prove a common-law marriage existed.

Patt requests attorney fees on appeal. The award of attorney fees is generally based on the parties' respective abilities to pay. *In re Marriage of Williams,* 303 N.W.2d 160, 167 (Iowa 1981). We order Freddie to pay $1,000 toward Patt's appellate attorney fees.

Accordingly, we affirm the district court.

AFFIRMED.