*In re* MARRIAGE OF LORI ELLEN MOSHER, a/k/a Lori Mosher Vera, Petitioner-Appellant, and ALPHONSO VERA, Respondent-Appellee.

Third District   No. 3—92—0212

Opinion filed March 5, 1993.—Rehearing denied April 16, 1993.

BARRY, J., dissenting.

Arthur J. Inman, of Peoria, for appellant.

Hartzell, Glidden, Tucker & Hartzell, of Carthage (Stanley L. Tucker, of counsel), for appellee.

JUSTICE SLATER delivered the opinion of the court:
Lori Mosher, a/k/a Lori Vera, filed a petition for dissolution of marriage against Alphonso Vera in the circuit court of McDonough County. She alleged that the parties had established a common law marriage under the laws of Iowa during a five-month period of residency in Iowa during 1986. The matter proceeded to trial on the sole question of whether the parties were married. The trial court found that Lori had failed to establish an agreement of the parties to be

married and that there was no marriage. On appeal, the issue before us is whether the finding of the trial court that the parties were not legally married is contrary to the manifest weight of the evidence.

Findings of the trial court will not be reversed on review unless they are clearly contrary to the manifest weight of the evidence. (*Fisher v. City of Aledo* (1974), 23 Ill. App. 3d 190, 318 N.E.2d 305.) For a judgment to be against the manifest weight of the evidence, it must appear that conclusions opposite to those reached by the trier of fact are clearly evident. (*Emmenegger Construction Co. v. King* (1982), 103 Ill. App. 3d 423, 431 N.E.2d 738.) The trial court's findings will be sustained unless wholly unsupported by the evidence. (*Armstrong v. United Insurance Co.* (1981), 98 Ill. App. 3d 1132, 424 N.E.2d 1216.) If there is evidence to support the fact conclusion, the reviewing court should not reverse, even if it disagrees with the trial court. *La Grange Metal Products v. Pettibone Mulliken Corp.* (1982), 106 Ill. App. 3d 1046, 1052, 436 N.E.2d 645.

Illinois has abolished common law marriages. (Ill. Rev. Stat. 1991, ch. 40, par. 214.) However, where the parties reside in another State at the time of contracting a common law marriage that was valid in that State, such marriage will be considered valid here upon their removal to Illinois. (*Peirce v. Peirce* (1942), 379 Ill. 185, 39 N.E.2d 990.) Throughout the circuit court proceedings, the parties agreed that the law of Iowa controlled the determination of whether a valid common law marriage existed. The burden of proof lies on the party asserting the common law marriage, and such a claim will be regarded with suspicion, there being no public policy in Iowa favoring common law marriage. *In re Marriage of Reed* (Iowa 1975), 226 N.W. 2d 795, 796.

The supreme court of Iowa, in *In re Marriage of Winegard* (Iowa 1979), 278 N.W.2d 505, 510, set forth the requirements for a common law marriage, as follows:

> "There are three elements requisite to a common law marriage: (1) intent and agreement in praesenti to be married by both parties; (2) continuous cohabitation; and (3) public declaration that the parties are husband and wife. [Citation.] The burden of proof lies on the party asserting its existence, and such a claim of marriage will be regarded with suspicion, there being no public policy in Iowa favoring common law marriage."

The Iowa court also stated that intent may be shown by circumstantial evidence in the common law marriage context.

According to the evidence, the parties began cohabitating in October of 1982 in Danbury, Connecticut. At that time, Lori was separated from her first husband whom she ultimately divorced in the fall of

1984. Two children, Natalia and Veronica, were born to the parties in 1984 and 1985, respectively. Alphonso has acknowledged paternity of both children.

When Alphonso completed his medical training and residency programs in July of 1985, the parties moved to Chicago with their children. In July of 1986, they moved to the Quad City area where Alphonso had obtained employment at Quad City Dermatology in Moline, Illinois. By arrangement of his employer, they lived in an apartment in Bettendorf, Iowa, until they found a home to purchase in Moline. In November of 1986 they moved to Moline, Illinois, where they resided until July of 1987. They then moved to Macomb, Illinois, where Alphonso opened his own practice as a dermatologist. After residing together for six years, they separated in August of 1988. In August of 1989 Lori filed this action.

According to Lori, Alphonso regularly introduced her socially as "my wife." Her testimony was corroborated by the wife of one of Alphonso's colleagues at Quad City Dermatology who claimed on one occasion to have been introduced to Lori by Alphonso in such manner. Alphonso denied introducing Lori as his wife and testified that he generally introduced her as "Lori," or "the mother of my children," or "my woman."

Income tax returns for the years 1986, 1987, 1988 and 1989 indicated that the parties were husband and wife. Alphonso's curriculum vitae stated that he was married to Lori Mosher. A second mortgage on the Moline real estate listing Alphonso and Lori as "husband and wife" was signed by both of them under oath on October 21, 1986, while they were residing in Bettendorf, Iowa. Insurance documents listed Lori as "wife" for auto and medical dependent coverage. A credit application sent to Von Maur department store showing Alphonso as the spouse of Lori Mosher-Vera, was signed by both parties. Local newspaper stories dated September 2, 1987, announced the opening of Dr. Vera's dermatology practice in Macomb and reported that he and his wife, Lori, will reside in Macomb. A similar article appeared in the McDonough District Hospital newsletter.

Lori described discussions she had with Alphonso on March 1 and 2, 1986, while they lived in Chicago. She said she told him that she wanted a legal marriage and that she did not feel comfortable living with a man without being married. He did not want anything that was legal or binding. However, according to Lori, he did agree to take a verbal oath of marriage with her before God. After she prepared the oath of marriage in the traditional form, the two of them said the words to each other on March 2. Alphonso admitted that Lori had

asked him to exchange vows with her, but denied that he had done so. From that time on, Lori testified that she regularly used the name "Vera." That was disputed by Alphonso.

The trial court concluded that Lori had established two of the elements of common law marriage required by Iowa law: continuous cohabitation and public declaration that the parties were husband and wife. As to the third requirement, that the parties have a present intent and agreement to be married, the trial court found that there was no evidence that Alphonso ever intended to be legally married to Lori. In making its finding on this issue, the trial court stated:

"These are two highly educated people. She wanted to get married, and he didn't, and I think that there's no question in the evidence that there was no agreement by these people to marry within the meaning of the law."

Here, there was clearly conflicting evidence on the issue of the intent of the parties. For us to reverse, it is necessary to establish the intent of the parties during the five months they resided in Iowa. Most of the evidence centered on public declarations during times they lived in Illinois. Other than public declarations and cohabitation in Iowa, none of their actions in Iowa show intent to be married.

The trial court observed the witnesses and their demeanor and made specific findings of fact which are amply supported by the evidence in the record. The trial court is in a superior position to observe the conduct of witnesses while testifying, to determine their credibility, to weigh the evidence, and to determine the preponderance thereof, especially where the evidence is contradictory. (*Scruggs v. Scruggs* (1974), 23 Ill. App. 3d 1004, 1009, 320 N.E.2d 406, 411; *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624, 626.) Based on the record before us, an opposite conclusion is not clearly evident. The trial court's findings are not unreasonable or arbitrary.

In *Newton v. Lehman* (1969), 105 Ill. App. 2d 442, 244 N.E.2d 830, an action for declaratory judgment was filed requesting that the court find the parties were not legally married. The parties had lived together in Iowa for a number of years, filed income tax returns as husband and wife, the plaintiff filed for bankruptcy listing the defendant as his wife, monies had been borrowed and the parties obligated themselves as husband and wife, and the plaintiff had previously filed an action for divorce in the State of Iowa. Despite these facts, the trial court found that no common law marriage existed under Iowa law. At the time the parties began living together, nothing had been said about a present intention of marriage. There was no common un-

derstanding of the parties to be husband and wife. On review, this appellate court found that the court's determination that a common law marriage was not established was not against the manifest weight of the evidence. The facts in the case before us today are surprisingly similar. Cohabitation and public declaration have been established, but present intent and agreement are lacking.

We conclude, under Iowa law, the conduct of the parties does not establish a mutual present intention and agreement to enter into a marital relationship.

The judgment of the circuit court of McDonough County is affirmed.

Affirmed.

McCUSKEY, P.J., concurs.

JUSTICE BARRY, dissenting:

The majority have failed to consider the impact of this decision upon the children of the parties and have misconstrued the law of Iowa; therefore, I dissent.

It should be noted that both parties agree that they have cohabited and lived together as a family since 1982. The evidence is also undisputed that Alphonso and Lori were regarded as married by everyone they had dealings with in Iowa and thereafter, and that neither party ever denied a marriage relationship. According to the wife of a colleague of Alphonso, he introduced Lori as his wife at a party in the Vera apartment in Iowa. Lori corroborated that testimony. Lori also testified that Alphonso never corrected anyone who assumed they were married, and that his mother, who lived with them, always referred to her as his wife. Their children used the last name "Vera."

Iowa courts have refused to accept a husband's statements at trial that he did not intend to enter into a marital relationship as determinative of whether a common law marriage existed and instead the courts examine the circumstantial evidence to determine whether the parties intended to sustain a relationship of husband and wife by mutual consent. (*E.g., In re Marriage of Winegard* (Iowa 1979), 278 N.W.2d 505; *Gammelgaard v. Gammelgaard* (1956), 247 Iowa 979, 77 N.W.2d 479; *In re Marriage of Gebhardt* (Iowa App. 1988), 426 N.W.2d 651.) In those cases, the courts considered significant the use of the man's surname by the woman with his repeated acquiescence, the man's payment of family expenses, joint vacations, newspaper publications describing the couple as husband and wife, insurance con-

tracts listing the woman as wife, and the opinions of other persons in the community that the parties were married.

In the *Gebhardt* case, Iowa law was summarized as follows:

"A person may be entitled to marital rights if his or her intention is to be married, even though the other person's intention is not the same, provided they cohabit and provided the conduct of one person justifies the other to believe he or she intended to be married. *In re Marriage of Winegard*, 257 N.W.2d 609, 616 (Iowa 1977) (citing *McFarland v. McFarland*, 51 Iowa 565, 570, 2 N.W. 269, 273-74 (1879)). Continuous cohabitation and the declaration of holding out to the public that the parties are husband and wife constitutes circumstantial evidence which tends to create a fair presumption that a common-law marital relationship exists. *Id.* at 617. Introduction of one party by the other as a wife or husband is in and of itself acknowledgment of marital relation. *In re Fisher's Estate*, 176 N.W.2d 801, 807 (Iowa 1970)." 426 N.W.2d at 652.

Although the evidence in the case before us is disputed as to whether Alphonso introduced Lori as his wife, it is not disputed that he published newspaper announcements relating to his practice in which Lori was described as his wife. Furthermore, he admitted that he never corrected anyone who assumed that they were married.

According to the *Gebhardt* analysis, the issue is not whether Alphonso ever intended to formalize a marriage agreement, but rather whether the circumstantial evidence established the existence of a common law marital relationship. Assuming, as we must, that Alphonso was correct when he testified that he refused to recite marriage vows in 1986, nonetheless Alphonso's admitted conduct in holding out Lori as his wife for social, professional, and financial purposes overwhelmingly established a valid common law marriage under Iowa law. In my view, Iowa law compels a finding that Alphonso's conduct during the time the parties lived together in Iowa and elsewhere conclusively established the parties' mutual intention to enter into a husband and wife relationship, regardless of any formal agreement or ceremony.

Furthermore, we cannot overlook the fact that these parties have two children born to them. By recognizing a common law marriage here, the children are legitimized. (See *Jambrone v. David* (1959), 16 Ill. 2d 32, 156 N.E.2d 569.) Conferring legitimacy upon these children is in harmony with the public policy of Illinois. *Peirce v. Peirce* (1942), 379 Ill. 185, 39 N.E.2d 990.

The majority rely upon *Newton v. Lehman* (1969), 105 Ill. App. 2d 442, 244 N.E.2d 830, in which the court declined to recognize a common law marriage. I find the facts of that case quite different than the facts before us here. First and foremost is the fact that the parties had no children, and second, Newton had married another woman after ceasing to cohabit with Lehman. Thus, recognition of a common law marriage would likely have resulted in bigamy charges. Also, there was no evidence that the parties ever introduced themselves as husband and wife or that they were so regarded by persons in the community where they had resided. Other than certain business transactions, the evidence did not disclose conduct by either party that would constitute a holding out to the public that they were husband and wife. The circumstances in the instant case differ greatly so that *Newton v. Lehman* should be distinguished, not followed.

As I have indicated, I am persuaded that the law of Iowa compels recognition of a common law marriage here, and the public policy of Illinois favoring legitimacy of children would be better served by a reversal of the judgment of the trial court.