Philip McCOLLUM, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A05–9509–PC–361.

Court of Appeals of Indiana.

Feb. 3, 1997.

Susan K. Carpenter, Public Defender, Hope Fey, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Attorney General, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for appellee.

## OPINION ON REHEARING

BARTEAU, Judge.

Phillip McCollum requests rehearing of this Court's opinion affirming the trial court's denial of post-conviction relief based on laches. We grant rehearing to address the following issues:

1. Whether the finding of knowledge and acquiescence constituting unreasonable delay was erroneously based upon inquiry notice?

2. Whether the finding of knowledge and acquiescence constituting unreasonable delay was based upon unreasonable inferences?

3. Whether the evidence of prejudice was sufficient?

## FACTS

In February of 1979, McCollum was involved in one of several fights outside a tavern. McCollum hit William Brown, and Brown began bleeding. Brown then yelled that he had been stabbed, and pointed out McCollum as the man who had stabbed him. McCollum ran off, but Brown chased McCollum and continued the fight. Police officers eventually broke up the fight. A bystander who had not witnessed the fight found a knife in a snow-bank and turned it over to the police.

On August 23, 1979, Philip McCollum was convicted following a jury trial of battery with a deadly weapon, a Class C felony. On October 13, 1988, the conviction was used to support a finding that McCollum was a habitual offender. McCollum filed a Petition for Post–Conviction Relief on July 8, 1991. The trial court denied post-conviction relief on the basis of laches and on the merits. We affirmed the post-conviction court's denial of relief on the basis of laches at 671 N.E.2d 168 (1996).

## INQUIRY NOTICE

■ McCollum argues in this petition that this Court improperly determined that he had knowledge of the defects or the means to challenge his conviction based upon inquiry notice alone. The Indiana Supreme Court, in *Perry v. State*, 512 N.E.2d 841, 844–45 (Ind. 1987), held that although inquiry notice alone was insufficient to support a finding of unreasonable delay, facts from which a reasonable finder of fact could infer knowledge, such as repeated contacts with the criminal justice system, consultation with attorneys, and incarceration in a penal institution with legal facilities, may support a finding of laches.

■ This Court cited *Nine v. State*, 484 N.E.2d 614, 616 (Ind.Ct.App.1985), *trans. denied* (1986), for the proposition that a petitioner's contacts with attorneys and the criminal justice system need not be based upon the same type of proceeding in order to infer that the petitioner gained knowledge of a

defect or the means to challenge the conviction, as long as the petitioner's contacts are sufficient from which to infer that he was in such a position as to have gained knowledge. In *Nine*, the finding of unreasonable delay was based upon the petitioner's repeated contacts with attorneys for a guilty plea, a petition to modify sentence, and a probation revocation. The supreme court in *Perry* approved the finding of unreasonable delay in *Nine* based upon an inference from the above factors. *Perry*, 512 N.E.2d at 844–45. Thus, although this Court's language that a court can infer knowledge from contacts that indicate the petitioner was in a position to learn about seeking relief from the challenged proceeding is misleading insofar as it suggests that inquiry notice alone is sufficient, this Court in fact based the finding of unreasonable delay upon the factors identified in *Perry*, namely, repeated contacts with the criminal justice system, consultation with attorneys, and incarceration in a penal institution with legal facilities. This Court's language was intended to reflect that a petitioner's contacts with attorneys and the criminal justice system can lead to knowledge of a defect or the means to challenge a conviction despite the fact that the contacts relate to different types of proceedings.

## REASONABLE INFERENCES

■ McCollum argues that it is unreasonable to infer that he gained knowledge of the defects or means to challenge his convictions from his contacts with attorneys because the four attorneys with whom he had contact subsequent to his conviction failed to litigate the defects raised in the petition for post-conviction relief. If we were to accept this reasoning then consultation with attorneys would rarely be a fact from which to infer petitioner's knowledge, since in most post-conviction cases the issues being litigated necessarily have not been litigated by past attorneys. This result clearly conflicts with *Perry*'s holding that knowledge can be inferred from consultation with attorneys. McCollum merely urges us to reject the use of consultation with attorneys as a fact from which to infer knowledge. We decline to do so. Further, *Perry* requires that a petitioner gain "knowledge of a defect in his conviction

*or* of the means to seek relief from the conviction." *Perry*, 512 N.E.2d at 843 (emphasis added). Thus, McCollum's argument that it is unreasonable to infer that he was aware of the specific defects in his trial is of no consequence, because it is logical to infer that McCollum learned of the means to seek relief from his conviction through his contacts with the attorneys and the legal system.

McCollum further argues that it is unreasonable to infer knowledge from his access to a law library during his incarceration in 1981 because he did not have access to his transcript until 1990, and therefore he could not have learned of the defects in his trial or appeal before 1990. McCollum's reasoning again urges us to reject a fact set forth in *Perry* as a fact from which the court can infer knowledge. Although McCollum did not have a copy of his transcript of his trial until 1990, this did not prevent him from gaining knowledge of the defects or means to challenge his conviction by his use of the law library. McCollum was present during his trial and witnessed any alleged defects that would be disclosed in the transcript. He was also able to learn about the means to challenge his conviction without reference to his transcript. A petitioner cannot avoid a finding of unreasonable delay by his failure to obtain a transcript of his trial despite his knowledge of a defect or the means to challenge his conviction.

McCollum further argues that the court cannot find unreasonable delay because he presented evidence that he knew nothing about post-conviction relief until 1989, when he attacked a guilty plea in a petition for post-conviction relief, and that thereafter he diligently sought the materials necessary to prepare a petition for post-conviction relief from the present conviction. Although a petitioner may present evidence to negate the State's evidence, we do not reweigh the evidence on review, but determine only whether sufficient evidence was presented from which to find unreasonable delay. McCollum's argument that he negated the evidence of reasonable delay merely invites us to reweigh the evidence.

■ Further, even if we were to accept McCollum's assertion that he did not learn of the defects or means to challenge the conviction until January of 1989, when he filed for postconviction relief in another case, McCollum still unreasonably delayed filing his petition for post-conviction relief in the present case until July of 1991, more than two years after the filing of his other petition for post-conviction relief. McCollum did not even begin to seek post-conviction relief for the challenged conviction until after his other petition for postconviction relief was denied. This delay was sufficient to support a finding of unreasonable delay.

### PREJUDICE

■ McCollum argues that this Court incorrectly determined that the evidence was sufficient to establish that the State was prejudiced by his delay because this Court failed to measure the loss of evidence against what its presence would have established at trial, as required under *Woodford v. State*, 544 N.E.2d 1355 (Ind.1989).

The post-conviction court found that McCollum's unreasonable delay had prejudiced that State as follows:

> The State has proven prejudice by presenting evidence that the victim and a key civilian prosecution witness cannot postively [sic] identify the petitioner, a key police witness cannot remember the facts of the crime and another key police witness has left the police department and now lives outside the county, 8000 miles away, and thus beyond the subpoena power of this court.... The State has been prejudiced by this unreasonable delay to the extent that the reasonable likelihood of successful reprosecution has been materially diminished by this passage of time attributable to petitioner's neglect.

R. 179–80.

McCollum was convicted of battery with a deadly weapon,[1] which requires proof that

---

1. McCollum was charged as follows:
   On or about the 24th day of February, 1979, in Tippecanoe County, State of Indiana, Philip

L. McCollum did knowingly touch William Bruce Brown in a rude, insolent and angry

McCollum knowingly or intentionally touched Brown in a rude, insolent, or angry manner, and that the touching was committed by means of a deadly weapon. *See* Ind.Code § 35–42–2–1 (1993).

At trial, Brown identified McCollum as the person with whom he was fighting immediately before he discovered that he had been stabbed, and stated that McCollum was wearing an eye patch at the time of the fight. Brown also testified at trial that he saw McCollum holding a knife immediately after Brown was stabbed. Brown was no longer able to identify McCollum at the post-conviction hearing, and said that he would not be able to identify McCollum even if McCollum were wearing an eye patch. Because Brown was the only person who testified at trial that he had seen McCollum holding the knife, his inability to identify McCollum left no witnesses who could testify that McCollum was holding a knife at the time Brown discovered that he was stabbed. The loss of this evidence would seriously diminish the State's ability to successfully reprosecute McCollum for battery with a deadly weapon.

In addition, Karl Ferger, who identified McCollum at trial as the person with whom Brown was fighting immediately before Brown said he was stabbed, was unable to identify McCollum at the post-conviction hearing. The only witness at the post-conviction hearing who was able to identify McCollum was Officer Jarrard, who did not witness the fight during which Brown was stabbed, and therefore could not identify McCollum as a participant in the fight.

In addition to the loss of identification evidence, Officer Jarrard testified that he was unable to clearly remember the events of the night in question. At trial, Officer Jarrard testified as to several events that surrounded the fight during which Brown was stabbed, including a previous fight inside the bar and a man he mistakenly thought he saw carrying a knife, but later determined was

carrying a car antenna. Officer Jarrard also testified at trial that Officer Kimbrell took possession of the knife that was found at the crime scene.

At the post-conviction hearing, Officer Jarrard testified about the general events of the evening, but could not remember the chain of custody for the knife that was discovered near the location of the fight. Officer Kimbrell was unavailable for the post-conviction hearing because he had moved out of the country, and rarely visited the United States, thus leaving no witnesses who could testify as to the chain of custody for the knife. The lack of evidence regarding the knife, in addition to the victim's inability to identify McCollum as the man he saw holding a knife, materially diminishes the State's ability to successfully reprosecute McCollum.

There was sufficient evidence that McCollum's twelve year delay prejudiced the State by materially diminishing the State's ability to reprosecute McCollum for battery with a deadly weapon. We find no error in our determination that the post-conviction court properly denied relief on the basis of laches.[2]

SHARPNACK, C.J., and SULLIVAN, J., concur.

---

manner, to wit: stabbing William Bruce Brown with a knife, a deadly weapon,
    All of which is contrary to the form of the statute in such cases made and provided, to wit: Indiana Code 35–42–2–1, and against the peace and dignity of the State of Indiana.

Trial R. 8.

**2.** We decline to address McCollum's argument that the finding of laches violates his due process rights except to refer McCollum to our analysis of that issue when it was before us on appeal.