**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 07 2013, 5:35 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**MICHAEL KELLEY**
Springfield, Missouri

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MICHAEL KELLEY,                        )
                                       )
    Appellant-Petitioner,          )
                                       )
        vs.                 )    No. 45A04-1303-PC-161
                                       )
STATE OF INDIANA,                      )
                                       )
    Appellee-Respondent.           )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane R. Boswell, Judge
Cause No. 45G03-1202-PC-3

**November 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Michael Allen Kelley, pro se, appeals the post-conviction court's denial of his petition for post-conviction relief. Thirty-seven years after being convicted of robbery and after a lifetime of subsequent criminal convictions, he contends that his 1975 robbery conviction should be set aside for numerous reasons, including his unsubstantiated claim that a plea agreement called for its dismissal. Since that time, the trial judge has died, his attorney has died, the victim could not be found but would be ninety-four years old if still alive, one responding officer is dead, and the other is retired, living in Florida. Laches precludes Kelley's claims. The post-conviction court also did not err in not appointing counsel and in not holding an evidentiary hearing. We affirm.

**Facts and Procedural History**

On October 23, 1974, the State charged Kelley with Class B felony robbery in Lake County. In November 1974, while still being detained for robbery, Kelley was indicted in the Northern District of Indiana on a multi-defendant conspiracy charge for the distribution of a controlled substance.

In July 1975, Kelley was sentenced to seven years' incarceration in the federal system.[1] At around the same time Kelley pled guilty to Class B felony robbery ("the 1975 robbery conviction") and was sentenced to a term of ten to twenty-five years. The court suspended the sentence on the condition that he be remanded to the custody of the United

---

[1] It is unclear exactly when Kelley was sentenced for his federal crime. In his brief, he claims that he was actually sentenced on June 7, 1975. *See* Appellant's Br. p. 6. The National Crime Information Center (NCIC) report states that he was sentenced on July 7, 1975. *See* Appellant's App. p. 126. However, the minutes of the court for his 1975 robbery conviction state that the sentence would be suspended on the condition that Kelley be remanded to the custody of the United States Marshall for execution of his previously imposed federal sentence, implying that his federal sentence was imposed first. *See id.* at 115.

States Marshal for execution of a sentence previously imposed by the U.S. District Court sitting in Hammond, Indiana. Appellant's App. p. 115.

Most of the records from Kelley's 1975 robbery case have been lost or destroyed. There is no surviving transcript of the guilty-plea hearing or sentencing. *Id.* at 58. The file from the Lake County Prosecutor's Office has also been destroyed. *Id.* at 132. The only surviving document from the case is the minutes of the court.[2] *Id.* at 115. Those minutes confirm Kelley's robbery conviction and do not indicate that it had been set aside. The affidavit of Wallace Adams, an investigator for the Lake County Prosecutor's Office, stated that he searched for Evelyn Kingsley, the complaining witness in Kelley's 1975 robbery case, and could not find her. If alive, she would be ninety-four years old. *Id.* at 131. Wallace also could not find the filing detective, Richard Rosinski. Although there was an individual with the same name living in Crown Point, Indiana, a visit to his house yielded no results. *Id.* Newman Jones, a responding officer, is dead. The other responding officer, Bruce Koch, is retired, living in Kissimmee, Florida. *Id.* Both the prosecutor who handled the matter and Kelley's court-appointed defense attorney are deceased. *Id.* at 36, 64.

Kelley claims that in the robbery plea agreement he promised to provide testimony in a grand-jury investigation, successfully complete an executed term of imprisonment, complete a term of supervised release, and earn a certificate of discharge pursuant to the

---

[2] The minutes of a court are the predecessor to the Chronological Case Summary.

provisions of the Federal Youth Corrections Act ("FYCA")[3] in exchange for his state convictions being expunged.[4] *Id.* at 84-85.

In May 1981, after completing his federal sentence and four years of supervised release without any violations, Kelley was given an early discharge and his federal conviction was automatically discharged pursuant to the FYCA. *Id.* at 126. In December 1982, Kelley was found guilty of murder in Lake County, Indiana and the court ordered a presentence investigation report (PSI). In the PSI report, Kelley's federal distribution of heroin charge contained a notation that, "[on] 5-6-81 he was discharged and the conviction was set aside." *Id.* at 122. No such notation existed for his 1975 robbery conviction in the PSI report. *Id.* at 123. Kelley claims, in his interview with the probation officer preparing the report, that he told the officer that his 1975 robbery conviction had been expunged in connection with the completion of his FYCA sentence. Appellant's Br. p. 7. Kelley's NCIC report shows that Lake County prosecutors had dismissed a Class B robbery charge in 1982, however both the NCIC and the PSI report show that Kelley had been charged with two robberies between 1974 and 1982. The dismissed robbery has a different case number from the 1975 robbery conviction. Appellant's App. p. 125, 127.

---

[3] The FYCA was formerly codified at 18 U.S.C §§ 5005-5026 (1970) (repealed in 1984). "[T]he repeal of the FYCA is an *ex post facto* law to the extent that it precludes the court from considering the FYCA in sentencing a youth offender who committed an offense prior to the repeal of the [Youth Corrections] Act." *United States v. Countryman*, 758 F.2d 574, 579 n.2 (11th Cir. 1985).

[4] What Kelley actually says is the agreement involved the state prosecutors, the federal prosecutors, and Kelley. He claims that in exchange for his promises, the parties agreed to have his state and federal convictions expunged. Appellant's App. p. 84-85. Kelley provides no explanation as to why his state convictions would be expunged pursuant to the FYCA, a federal law, or why federal prosecutors would be parties to a plea agreement with the State.

In 2011, Kelley was indicted in the Western District of Missouri for being a felon in possession of a firearm. Because he had four earlier violent felonies, one of which included the 1975 robbery conviction and three others subsequent to the robbery, the United States filed an enhancement under the Armed Career Criminal Act, which carries a mandatory minimum sentence of fifteen years. *See* 18 U.S.C. § 924(e) (2013). He alleges that this is when he learned for the first time that his 1975 robbery conviction had not been expunged. Kelley's court-appointed attorney informed him that she would not be able to assist him with any legal action in Indiana.

Kelley then filed a pro se motion to withdraw his guilty plea, claiming that the State had breached the terms of his robbery plea agreement in 1975. In January 2012, the trial court denied his motion to withdraw his guilty plea and explained that he must file a petition for post-conviction relief in order to attack his 1975 robbery conviction. Appellant's App. p. 13.

In February 2012, he filed a pro se petition for post-conviction relief, which he amended in June 2012. In his petition for post-conviction relief, Kelley alleged that his plea agreement provided that if he gave testimony in a grand-jury investigation, successfully completed an executed term of imprisonment and a term of probation, and earned a certificate of discharge pursuant to the provisions of the FYCA, that his "state and federal convictions would be expunged and vacated and his full civil rights would be restored without any disabilities." *Id.* at 85. Kelley submitted no plea agreement to substantiate his claim to the post-conviction court.

In his petition for post-conviction relief, he also stated that he was indigent and requested representation by a public defender. *Id.* at 20. However, because his case had no direct present penal consequences, the State Public Defender's Office refused to represent him. *Id.* at 23-24.

Kelley then filed several discovery requests with various individuals in order to locate the plea agreement and any information that would help in reconstructing the record. *Id.* at 26-32, 42-47, 66-70, 75-79, 101-02, 152-56.

The State filed its response to Kelley's petition for post-conviction relief in April 2012. In its answer, the State pled the affirmative defense of laches. Kelley claims he did not receive the State's response because it was sent to the wrong address.[5] Appellant's Br. p. 10. The trial court decided not to have a hearing because Kelley was incarcerated outside of Indiana. Instead, the trial court ordered Kelley to submit affidavits and other evidence on or before July 2, 2012, and for the State to file any evidence or objections to Kelley's evidence on or before July 30, 2012. Appellant's App. p. 57. The trial court was unable to obtain a copy of the guilty-plea and sentencing hearing because the stenographic notes from the case had been lost or destroyed, but the court did have a copy of the court minutes showing the 1975 robbery conviction. *Id.* at 58.

On July 31, 2012, one day after the time had expired for the State to file its evidence, the State filed a motion requesting a three-day extension of time to file its evidence because one of the required witnesses had been out of the office and unavailable to sign an affidavit.

---

[5] Although Kelley claims the State's answer was sent to the wrong address, it includes a certificate of service, which correctly lists Kelley's address in the Greene County Jail in Springfield, MO. *See* Appellant's App. p. 40.

6

*Id.* at 106. The next day, the trial court denied the State's motion as moot because the State submitted its evidence on August 1.[6]

In addition to the State's submitted evidence, the State also requested the post-conviction court to take judicial notice of the official file of the clerk, the PSI report from Kelley's 1982 murder conviction, and the FYCA. *Id.* at 112.

The post-conviction court found that laches barred Kelley from obtaining post-conviction relief. In denying the petition, the post-conviction court found Kelley was aware as early as 1982 that his robbery conviction had not been vacated and that he unreasonably delayed in filing a collateral challenge to his conviction. *Id.* at 268-69. Kelley then filed a writ of mandamus to disqualify the post-conviction trial judge and appoint a special judge, which was subsequently denied. *Id.* at 282. Kelley also filed a motion to correct error claiming that the State withheld evidence, he was denied an evidentiary hearing, he never received a copy of the State's answer, and he never received a blank post-conviction petition form, which was also denied. *Id.* at 296.

Kelley now appeals.

**Discussion and Decision**

Kelley argues that the post-conviction court improperly denied him relief. In a post-conviction proceeding, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Passwater v. State*, 989 N.E.2d 766, 770 (Ind. 2013). Because the State had the burden of proving laches

---

[6] Although the court order stated that the motion to extend was "denied as moot," the trial court implicitly granted the State's motion by allowing it to file the evidence two days late. *See* Appellant's App. p. 108. Kelley has filed a Motion to Strike State's Improper Evidence with this Court. We deny this motion in a separate order issued today.

as an affirmative defense, Kelley is not appealing from a negative judgment. *Armstrong v. State*, 747 N.E.2d 1119 (Ind. 2001). The applicable standard of review requires us to affirm the judgment of the post-conviction court unless we find that the judgment was clearly erroneous. Ind. Trial Rule 52(A); *Armstrong*, 747 N.E.2d at 1119. In this case, the post-conviction court entered findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). An appellate court may reverse the post-conviction court's findings and judgments "only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.* Findings of facts are accepted unless clearly erroneous, but no deference is accorded to conclusions of law. *Id.*

Kelley claims that the post-conviction court erred in denying relief on the basis of laches, he was denied a right to counsel for his post-conviction hearing, and the post-conviction court improperly declined to hold an evidentiary hearing.[7]

## I. Laches

Kelley asserts that the post-conviction court erred in denying relief on the basis of laches because he waited approximately thirty-seven years after his conviction to file his petition for post-conviction relief. Laches is neglect for an unreasonable or unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. *Sanders v. State*, 733 N.E.2d 928, 930 (Ind. 2000). The affirmative defense of

---

[7] Kelley also claims that the State breached the robbery plea agreement, he received ineffective assistance of counsel, and his plea was not knowing and intelligent. We do not discuss these arguments because we find the issue of laches dispositive.

laches has two elements. The State must prove by a preponderance of the evidence that the petitioner unreasonably delayed in seeking relief and the State has been prejudiced by the delay. *Lacy v. State*, 491 N.E.2d 520, 521 (Ind. 1986).

For Kelley to have unreasonably delayed in filing his post-conviction relief petition, he must have known of a defect in his conviction. *Kirby v. State*, 822 N.E.2d 1097, 1100 (Ind. Ct. App. 2005) ("A finding of knowledge and acquiescence is therefore implicit in a finding of unreasonable delay."), *trans. denied*. Moreover, it is well-established that "[r]epeated contacts with the criminal justice system, consultation with attorneys and incarceration in a penal institution with legal facilities are all facts from which the fact finder may infer knowledge." *Perry v. State*, 512 N.E.2d 841, 845 (Ind. 1987), *reh'g denied*. While inquiry notice is insufficient to support a finding of unreasonable delay, facts from which a reasonable finder of fact could infer petitioner's knowledge may support a finding of laches. *Id.* at 844.

As to the State being prejudiced by the delay, prejudice exists when the unreasonable delay operates to materially diminish a reasonable likelihood of successful re-prosecution. *Armstrong*, 747 N.E.2d at 1120. Our Court has stated that, "[t]he inability to reconstruct a case against a petitioner is demonstrated by unavailable evidence such as destroyed records, deceased witnesses, or witnesses who have no independent recollection of the event." *Taylor v. State*, 492 N.E.2d 1091, 1093 (Ind. Ct. App. 1986). However, in investigating whether evidence is unavailable, the State is obligated to use due diligence. *McCollum v. State*, 671 N.E.2d 168, 172 (Ind. Ct. App. 1996), *clarified on reh'g*, 676 N.E.2d 356 (Ind. Ct. App. 1997), *trans. denied*.

Whether Kelley has untimely delayed depends on when Kelley learned that his 1975 Class B felony robbery conviction had not been expunged. Kelley claims that he did not learn of its existence until December 2011 when he met with a lawyer in an unrelated criminal matter. However, in December 1982, Kelley was convicted of murder and the court ordered a PSI report. The State claims that because the conviction in the 1975 robbery case was listed on the PSI report, Kelley should have been aware of the fact that his conviction had not been expunged.

The post-conviction court, as requested by the State, appropriately took judicial notice of the PSI report ordered in Kelley's 1982 murder case. *See Mitchell v. State*, 946 N.E.2d 640, 644 (Ind. Ct. App. 2011) (allowing a court to take judicial notice of court records of this State), *trans. denied*. That report clearly states that Kelley had a past conviction for robbery in 1975 which had not been set aside even though the PSI notes that Kelley's federal conviction for distribution of heroin was set aside on May 6, 1981. Appellant's App. p. 122-23. Thus, Kelley was on notice at the time of the PSI report that his previous conviction had not been vacated and was still on his record. Despite this, he waited almost thirty years after learning this to file a petition for post-conviction relief. While the State must present some objective facts from which the court may draw a reasonable inference of knowledge, "the court is not required to accept a petitioner's assertion of ignorance." *Perry*, 512 N.E.2d at 845.

Additionally, Kelley had repeated contacts with the criminal-justice system. Kelley was convicted of another Class B felony robbery in 1983. Appellant's App. p. 147. The

minutes of the court state that Kelley's sentence in 1983 was made on the basis of his extensive criminal history.

In January 2003, approximately eight years before he filed his petition for post-conviction relief, Kelley was convicted of Class D felony check fraud. *Id.* at 184. He was also convicted of Class D felony theft in November 2005, approximately six years before he filed his petition for post-conviction relief. We may infer that Kelley knew that his conviction had not been expunged based on his repeated contacts with the criminal-justice system, consultation with attorneys, and his incarceration in a penal institution with legal facilities. *See Perry*, 512 N.E.2d at 845.

There is also some independent evidence presented by the State, which suggests that the plea agreement as explained by Kelley did not exist. The PSI report from Kelley's 1982 murder conviction lists the 1975 robbery conviction. Appellant's App. p. 123. On the previous page, the PSI notes Kelley's federal conviction for distribution of heroin and states that, "[o]n 5-6-81 he was discharged and the conviction was set aside." *Id.* at 122. The State convincingly argues that had the 1975 robbery conviction been set aside, a similar notation would have been made.

In addition to unreasonable delay, the State must also prove that it was prejudiced by the delay. In this case, the State has successfully shown that it would be nearly impossible to re-prosecute Kelley. The affidavit of Deborah Thill, the file clerk of the Lake County Prosecutor's Office, stated that the file in Kelley's case had been destroyed. *Id.* at 132. Wallace Adams, an investigator for the Lake County Prosecutor's Office, was unable to find Kingsley, the complaining witness, and believes that she is deceased. *Id.* at 131. If

she were alive, she would be approximately ninety-four years old. *Id.* Rosinski, the filing detective, is no longer employed with the Hammond Police Department and could not be found. *Id.* Jones, one of the responding officers, is dead and the other, Koch, is currently retired, living in Kissimmee, Florida. *Id.* Both the prosecutor and the defense attorney in this case are also deceased. *Id.* at 36, 64.

For all practical purposes, re-prosecution would be impossible. No participants of the trial are still alive, the trial transcript is missing, the prosecutor's office files have been destroyed, and only one responding officer is still living. For this reason, the trial court did not err in denying Kelley's petition for post-conviction relief on the basis of laches.

## II.  Appointment of Counsel

Next, Kelley argues that his right to counsel was violated by the State Public Defender's Office's refusal to represent him for his post-conviction relief petition. However,

> [t]he right to counsel in post-conviction proceedings is guaranteed by neither the Sixth Amendment of the United States Constitution nor art. 1, § 13 of the Constitution of Indiana. A petition for post-conviction relief is not generally regarded as a criminal proceeding and does not call for a public trial within the meaning of these constitutional provisions.

*Baum v. State*, 533 N.E.2d 1200, 1201 (Ind. 1989). Moreover, the Post-Conviction Relief rules are instructive. Post-Conviction Rule 1(9)(a) states that, "[t]he Public Defender may refuse representation in any case where the conviction or sentence being challenged has no present penal consequences." Ind. Post-Conviction Rule 1(9)(a).

In this case, the State Public Defender's Office chose to deny Kelley's request for representation because his case had no direct present penal consequences. Appellant's

App. p. 23-24. This was permissible according to the Indiana Post-Conviction Rules. Kelley's right to counsel under the Sixth Amendment was not violated.[8]

### III. Evidentiary Hearing

Last, Kelley asserts that the post-conviction court erred by not holding an evidentiary hearing. The Indiana Post-Conviction Rules are again instructive. Post-Conviction Rule 1(5) states that, "[t]he court may receive affidavits, depositions, oral testimony, or other evidence and may at its discretion order the applicant brought before it for the hearing." Ind. Post-Conviction Rule 1(5). The rules also state that "[i]n the event petitioner elects to proceed pro se, the court at its discretion may order the cause submitted upon affidavit." *Id.* 1(9)(b).

The post-conviction court exercised its discretion in not holding an evidentiary hearing. The court issued a Nunc Pro Tunc order in May 2012, denying an evidentiary hearing because, "the defendant is in custody outside the State of Indiana . . . ." Appellant's App. p. 57. The post-conviction court again denied an evidentiary hearing in August 2012 after Kelley filed a motion for reconsideration.

Moreover, it is not clear how helpful an evidentiary hearing would be in this case. The trial judge, prosecutor, and defense attorney involved are all deceased. No one, other than Kelley, remains alive to testify to what actually occurred at trial.[9] An evidentiary

---

[8] Kelley argues that the post-conviction court erred because it allowed the public defender to withdraw from his case. Appellant's Br. p. 46. The public defender did not withdraw, but in actuality never represented him during these post-conviction proceedings.

[9] In a motion to remand filed with this Court, Kelley claims that he could have cross-examined William Wilkerson, the probation officer who prepared his 1982 PSI report. We deny this motion in a separate order issued today. Even if Wilkerson were to remember the conversation from over thirty years ago, his testimony about what Kelley told him about his robbery plea agreement would not prove that the plea agreement existed or persuade us that his claim is not barred by laches.

hearing in this case would not help the post-conviction court any more than the affidavits submitted. For this reason, the post-conviction court did not err in declining to hold an evidentiary hearing. We therefore affirm the judgment of the post-conviction court.

Affirmed.

BAKER, J., and FRIEDLANDER, J., concur.